THE BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA d/b/a The Georgia Institute of Technology, Plaintiff,

v.

BUZAS BASEBALL, INC., d/b/a the Salt Lake Buzz, a Utah Corporation, Defendant.

No. CIV.A.1:98–CV–987CAP.

United States District Court, N.D. Georgia, Atlanta Division.

April 26, 2001.

Bryon J. Benevento, Snell & Wilmer, Salt Lake City, UT, Michael Anthony Cicero, Everett Warner Gee, III, Michael F. Hanson, David Scott Sudderth, James F. Vaughan, Womble Carlyle Sandridge & Rice, Atlanta, GA, Kenneth C. Gibson, Womble Carlyle Sandridge & Rice, Greenville, SC, Alan L. Sullivan, Snell & Wilmer, Salt Lake City, UT, for Plaintiff.

Mike Bothwell, Office of Mike Bothwell, Roswell, GA, Gregory D. Phillips, Howard Phillips & Anderson, Salt Lake City, UT, Roger Dale Taylor, Finnegan Henderson Farabow Garrett & Dunner, Atlanta, GA, for Defendant.

### ORDER

PANNELL, District Judge.

The plaintiff filed the instant action, alleging infringement of two of its registered trademarks. The plaintiff's complaint asserts claims under the Lanham Act, 15 U.S.C. § 1051, et seq., Georgia's Uniform Deceptive Trade Practices Act, O.G.C.A. § 10–1–370, et seq., and for common law trademark infringement and unfair competition. The plaintiff is the Georgia Institute of Technology ("Georgia Tech"). Georgia Tech has registered the word "Buzz" and a graphic design of a yellow jacket ("Yellow Jacket Design") as trademarks with the United States Patent and Trademark Office ("PTO"). Buzas Baseball, Inc. ("Buzas") owns and operates the Salt Lake Buzz, a professional minor league baseball team based in Salt Lake City, Utah. This matter is now before the court on the plaintiff's motions for partial summary judgment [Doc. Nos. 134–1; 137–1; 139–1], the defendant's motion for summary judgment [Doc. No. 140–1], the plaintiff's motion for discovery sanctions pursuant to Rules 26(g) and 37(a)(4), Federal Rules of Civil Procedure [Doc. No. 167–1], and the plaintiff's motion to strike Tammi Felker, David R. Tucker, and Hillary Buzas–Drammis from the defendant's witness list [Doc. No. 169–1].

As a preliminary matter, the court DENIES the plaintiff's motion for sanctions [Doc. No. 167–1] and DENIES the plaintiff's motion to strike [Doc. No. 169–1]. Georgia Tech moved to strike the three witnesses because Buzas Baseball failed to adequately disclose them within a reasonable time during discovery. If the plaintiff wishes to depose Ms. Felker, Mr. Tucker, or Ms. Buzas–Drammis, it shall submit a proper motion to reopen discovery for the limited purpose of taking these depositions. Because Ms. Felker has not been located by the parties, and because Mr. Tucker and Ms. Buzas–Drammis would only testify at trial if Mr. Buzas' health problems prohibit him from testifying, the court sees no reason not to rule on the pending motions for summary judgment.

### I. FACTUAL DISCUSSION

Georgia Tech is a technical college in Atlanta, Georgia, and its nickname is the "Yellow Jackets" or the "Ramblin' Wreck." Georgia Tech uses a graphic design of a yellow jacket and a mascot named "Buzz" to promote the school and its intercollegi-

ate sports teams. Buzas Baseball owns and operates the Salt Lake Buzz, a professional minor league baseball team in Salt Lake City, Utah. It uses a mascot named "Buzzy" to promote the team. Both parties sell merchandise such as hats and t-shirts with the words Buzz and bee-like logos. Georgia Tech owns registered trademarks for the word "Buzz" for use on clothing, sweatshirts, and t-shirts, and in conducting athletic contests in a variety of sports. It was issued this registration on December 6, 1998. On September 8, 1997, Georgia Tech also registered a graphic design of a yellow-jacket for use in conducting athletic contests in a variety of sports.

Georgia Tech alleges that Buzas Baseball's use of the word "Buzz" and a graphic design of a bee-like insect infringes on its trademarks. Buzas Baseball contends that in 1993, when Buzas Baseball began to operate its minor league baseball team, it sought to adopt a name that conveyed a connection to the State of Utah, which is known as the "Beehive State," and that included the letters "zz" so that the name would be consistent with the state's other sports teams whose nicknames included "zz," e.g., the Utah Jazz, the Utah Grizzlies, and the Utah Starzz. Georgia Tech, however, correctly points out that in 1993, the Utah Grizzlies and the Utah Starzz were not in existence. The Starzz are a WNBA basketball team. The WNBA did not exist prior to 1996. The Grizzlies are an IHL team that was located in Denver in 1993–1994 and did not move to Utah until 1995.

Buzas Baseball also alleges that at the time Buzas Baseball was trying to decide on a name, a Salt Lake City sports columnist wrote two columns in the Salt Lake Tribune suggesting the name "Buzz" because it fit Buzas Baseball's criteria, and because it was reminiscent of the moniker by which the owner, Joseph Buzas, was known during his professional baseball career. Mr. Roseta testified that he was not aware that Georgia Tech had a mascot named "Buzz." Buzas Baseball never conducted a trademark search prior to using either "Buzz" or the bee logo. It did conduct a search in 1996 that resulted in finding Georgia Tech's registration for "Buzz."

The Salt Lake Buzz is based in Utah and operates in the Pacific Coast League of the National Association of Professional Baseball Leagues. It does not play games in Georgia. Buzas Baseball sells Salt Lake Buzz merchandise at its home field, Franklin Covey Field, through the mail, and online via the Internet. Major League Baseball Properties also sells Salt Lake Buzz merchandise in traditional stores, through mail order, and online. The Salt Lake Buzz is advertised in Salt Lake area newspapers, in local and national magazines, local television and radio, and through direct mail promotions. Georgia Tech alleges that Buzas Baseball has also advertised its merchandise in catalogues published by Star Struck, Inc. Georgia Tech sells its merchandise through direct telephone and mail orders, online, through catalogues, retail and wholesale shops, and on site at Georgia Tech's sports stadiums and arenas.

Buzas Baseball's team mascot, "Buzzy," performs at Salt Lake Buzz home games in Salt Lake City. He also appears in parades and at youth baseball clinics in the Salt Lake area. Buzas Baseball states that "Buzzy" has never appeared outside of Utah. In 1997, trading cards featuring minor league baseball mascots, including "Buzzy," were include in packets of minor league baseball trading cards.

One of its marks that Georgia Tech alleges is being infringed is "Buzz." Buzas Baseball notes that there are many trademark registrations and pending trademark

applications that use the word "Buzz" in some form. Georgia Tech also alleges an infringement of its Yellow Jacket Design. Buzas Baseball again notes that many registered trademarks depict bees or bee-like insects similar to the plaintiff's Yellow Jacket Design. Buzas Baseball adds that there are additional third parties who use similar words or designs that are not registered trademarks or the subject of pending applications, including Sprayberry High School in Marietta, Georgia, Thomas County Central High School in Thomasville, Georgia, and Browns Mill Elementary School in Lithonia, Georgia, which are known as the Yellow Jackets and which use bee-like mascots similar to Georgia Tech's mascot "Buzz." Buzas Baseball further notes that six other professional sports teams have adopted bee-like insects as mascots.

In late 1996, Mr. Derek M. Eiler, the Vice President of University Services with Collegiate Licensing Company, saw a baseball cap bearing the logo of the Salt Lake Buzz while on a trip to Salt Lake City, Utah. Upon returning from Utah to Georgia, Mr. Eiler told Ms. Tammy Tuley of Georgia Tech what he had seen. The next year, on or about August 14, 1997, Georgia Tech informed Buzas Baseball that it objected to the use of the word "Buzz" and the Salt Lake Buzz's bee logo. The parties then began negotiations in an attempt to settle this dispute. The parties allegedly reached a settlement in principle sometime prior to March 13, 1998. On March 13, 1998, however, Buzas Baseball filed a declaratory judgment action in the United States District Court for the District of Utah. The District Court dismissed Buzas Baseball's action. The dismissal was subsequently affirmed by the United States Court of Appeals for the Tenth Circuit. Georgia Tech then filed the instant suit.

## II. LEGAL DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The party seeking summary judgment bears the burden of demonstrating that no dispute as to any material fact exists. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 156, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *see also Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir.1996). The moving party's burden is discharged merely by " 'showing'—that is, pointing out to the District Court that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. See *Clifton*, 74 F.3d at 1090. Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. See *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In deciding a motion for summary judgment, it is not the court's function to decide issues of material fact but to decide only whether there is such an issue to be tried. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The applicable substantive law will identify those facts that are material. See *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2510. Facts that in

good faith are disputed, but which do not resolve or affect the outcome of the case, will not preclude the entry of summary judgment as those facts are not material. *See Id.*

Genuine disputes are those by which the evidence is such that a reasonable jury could return a verdict for the nonmovant. *See Id.* In order for factual issues to be "genuine" they must have a real basis in the record. *See Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. When the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Id.* (citations omitted).

### A. *The Plaintiff's Motion for Partial Summary Judgment on the Defendant's Equitable and Miscellaneous Defenses*

Georgia Tech moves for partial summary judgment on Buzas Baseball's second, third, fifth, sixth, eighth, twelfth, and fourteenth defenses. Buzas Baseball's twelfth defense is failure to join an indispensable party and its fourteenth defense is disqualification of counsel because Buzas Baseball believes that the plaintiff's counsel will testify in this case. As to the twelfth and fourteenth defenses, the court finds a genuine dispute as to an issue of material fact exists and, therefore, DENIES summary judgment. This ruling, however, does not preclude the raising of these issues in the future. The court will now discuss the equitable defenses.

#### 1. Buzas Baseball's Second Defense: Waiver

■ Georgia Tech contends that waiver is not a cognizable defense in the trademark arena, and that even if it is, Georgia Tech has not waived its trademark rights. Buzas Baseball argues that not only is waiver cognizable but that Georgia Tech has waived its trademark rights by acquiescing in the use of the term "Buzz" by

Buzas Baseball and hundreds of other entities who have obtained federal registrations using this term.

The court finds that the fact that hundreds of other entities also have registered trademarks using the term "Buzz" is irrelevant to a determination of waiver. It is very common for more than one entity to use the same term and still have valid, enforceable rights to those terms as trademarks. Further, the argument that Georgia Tech waived its rights by acquiescing in Buzas Baseball's use of the term "Buzz" is without proof.

■ Buzas Baseball argues that waiver is defined as implied acquiescence. Acquiescence is an equitable defense that denotes active consent by a senior user to another's use of its mark. *See Coach House Restaurant v. Coach and Six Restaurants,* 934 F.2d 1551, 1558 (11th Cir. 1991). Acquiescence has three elements: (1) the senior user actively represented that it would not assert a right or claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice. *See id.* Georgia Tech first learned of the use of "Buzz" by the defendant in late 1996. It objected to said use in August 1997, at the latest. Thereafter, Georgia Tech sought to resolve its dispute with Buzas Baseball but filed suit after negotiations broke down. The court finds no evidence that Georgia Tech ever actively or passively represented to Buzas Baseball that it could continue to use the term "Buzz" in connection with the Salt Lake Buzz. Therefore, the court GRANTS summary judgment to the plaintiff as to the defendant's second defense of waiver.

#### 2. The Defendant's Third Defense: Estoppel and Equitable Estoppel

■ For the defendant to assert the defense of estoppel, it must show: (1)

words, acts, conduct, or acquiescence by the plaintiff causing the defendant to believe in the existence of a certain state of things; (2) wilfulness or negligence with regard to the acts, conduct, or acquiescence; and (3) detrimental reliance by the defendant upon the state of things so indicated. *See Tefel v. Reno,* 180 F.3d 1286, 1302 (11th Cir.1999). Buzas Baseball contends that Georgia Tech acquiesced in its use of "Buzz," that it relied upon that acquiescence, it built up its baseball business based on that reliance, and Buzas Baseball would be materially harmed if Georgia Tech is not estopped from asserting it has trademark rights in the term "Buzz." Because the court has already held that the evidence presented by the defendant fails to show acquiescence, the court also holds that Georgia Tech never actively or implicitly led Buzas Baseball to believe it approved of its use of the term "Buzz" but, rather, it objected to such use. Therefore, the court GRANTS summary judgment to the plaintiff on the defendant's third defense of estoppel.

### 3. The Defendant's Fifth Defense: Laches

Laches may bar claims under the Lanham Act for trademark infringement. *See Kason Industries, Inc. v. Component Hardware Group, Inc.,* 120 F.3d 1199, 1203 (11th Cir.1997). To succeed on its allegation that this action is barred by laches, the defendant must show: (1) a delay in asserting a right or claim; (2) that the delay was not excusable and; (3) there was undue prejudice to the party against whom the claim is asserted. *See id.* The test for laches is flexible, requiring a careful examination of both the delay and the prejudice caused by that delay. *See Conagra, Inc. v. Singleton,* 743 F.2d 1508, 1517 (11th Cir.1984). In addition, the court must consider the public's interest in the trademark as a definite designation of a single source of the goods. *See id.*

The only real delay by the plaintiff in asserting its rights that the defendant has shown is between the time they discovered the use of "Buzz" by Buzas Baseball, sometime in late 1996, and Georgia Tech's first objection to said use in August 1997, which was followed by negotiations that can hardly be defined as a delay of Georgia Tech asserting its rights. Therefore, the court GRANTS the plaintiff's motion for summary judgment as to the defendant's fifth defense of laches.

### 4. The Defendant's Sixth Defense: Unclean Hands

The doctrine of unclean hands means that "he who comes into equity must come with clean hands." *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.,* 324 U.S. 806, 814, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945). This doctrine requires that the party seeking equity shall have acted fairly and without fraud or deceit as to the controversy in issue. *Id.* at 815–815, 65 S.Ct. 993. Buzas Baseball argues that because Georgia Tech filed the instant lawsuit despite the fact that it permits the use of "Buzz" by third parties shows bad faith. The court disagrees for several reasons. First, Georgia Tech may not believe it has claims against other users because it uses its mark on a product different from the other users. Second, Georgia Tech may be contemplating filing suit against other users but it is waiting for its rights to ripen. For example, a current use of the mark "Buzz" may not yet be in direct competition with Georgia Tech's mark. *See Kason Industries, Inc. v. Component Hardware Group, Inc.,* 120 F.3d 1199 (11th Cir.1997) (discussing the idea of progressive encroachment). Lastly, the court suspects that Georgia Tech chose to ignore certain third party use because it would create bad publicity if Georgia Tech started suing local Georgia high schools and elementary schools. The

court finds no bad faith, fraud, or deceit relating to the controversy at issue that supports the defendant's defense of unclean hands. Therefore, the court GRANTS summary judgment as to the defendant's sixth defense.

### 5. The Defendant's Eighth Defense

The defendant's eighth defense is a restating of its prior defenses of laches, unclean hands, and estoppel. Because the court granted summary judgment as to those defenses, the court GRANTS summary judgment as to the defendant's eighth defense as well.

For the foregoing reasons, the court hereby GRANTS in part and DENIES in part the plaintiff's motion for partial summary judgment [Doc. No. 134–1]. The court GRANTS the motion as to the defendant's second, third, fifth, sixth, and eighth defenses, and DENIES the motion as to the defendant's twelfth and fourteenth defenses.

### B. *The Plaintiff's Motion for Partial Summary Judgment on the Defendant's Counterclaim and Eleventh Defense*

Buzas Baseball's counterclaim and eleventh defense allege that Georgia Tech has abandoned its marks and, therefore, they should be canceled pursuant to 15 U.S.C. § 1064(3). The defense of abandonment requires strict proof.[1] *See Conagra Inc.,* 743 F.2d at 1516. "Defendant[ ] must show that the plaintiff actually abandoned the use of the mark, and, also, that the plaintiff intended to abandon the mark." *Citibank, N.A. v. Citibanc Group, Inc.,* 724 F.2d 1540, 1545 (11th Cir.1984). Buzas Baseball contends that Georgia Tech has abandoned its marks by permitting their use by third parties without exercising any quality control measures. More specifically, Buzas Baseball cites the use of the Georgia Tech marks by three schools in Georgia: Sprayberry High School, Browns Mill Elementary School, and Thomas County High School. Buzas Baseball contends that allowing these three schools to use Georgia Tech's marks amounts to naked licensing by Georgia Tech. Naked licensing is "[u]ncontrolled licensing of a mark whereby the licensee can place the mark on any quality or type of goods or services." 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 18:48 (4th ed.2000).

The court finds, however, that the Georgia schools are mere third party users, not licensees. There is no evidence that Georgia Tech has any agreement with these schools or has received any consideration for the use of its marks. They are merely third party users that Georgia Tech either was unaware of or has tolerated for its own reasons. "[F]ailure to institute legal action against an infringer is insufficient to establish abandonment of a trademark." *Babbit Electronics, Inc. v. Dynascan Corp.,* 38 F.3d 1161, 1180 (11th Cir.1994). Further, Georgia Tech has shown that with regard to those users with whom it does have licensing agreements, it has a strong history of policing the use of its trademarks. The court finds that Georgia Tech has not abandoned its marks. Therefore, the court hereby GRANTS summary judgment to Georgia Tech on Buzas Baseball's eleventh defense and on its counterclaim for cancellation [Doc. No. 137–1].

---

1. While Buzas Baseball has alleged abandonment as both an affirmative defense and as a basis for its counterclaim for cancellation, because the standard for finding abandonment is the same, the court will apply the analysis to both the affirmative defense and the counterclaim for cancellation.

**C. The Plaintiff's Motion for Partial Summary Judgment Regarding Validity, Ownership, Market Presence, and the Defendant's Thirteenth Defense**

██ Georgia Tech moves the court for an order directing the entry of summary judgment declaring (1) that its trademarks are valid; (2) that it owns the trademarks; (3) that the marks have market presence in Utah and Tennessee warranting a permanent injunction if Buzas Baseball is found liable for infringement; and (4) striking Buzas Baseball's thirteenth defense alleging geographically separate markets. Buzas Baseball's only argument against entry of summary judgment declaring that Georgia Tech owns the marks and that the marks are valid is its argument that said marks should be canceled. Because the court has already entered summary judgment against Buzas Baseball on its claim for cancellation, the court finds that Georgia Tech is entitled to partial summary judgment declaring that it owns U.S. Trademark Registrations Nos. 1,456,-921 and 1,515,501, as well as the trademarks identified in said registrations, and that the marks are valid.[2]

██ Buzas Baseball's thirteenth defense states: "Georgia Tech's claims are barred in whole or in part because Georgia Tech and Buzas Baseball do not conduct business in the same geographic territories or markets and through the same marketing channels." Georgia Tech seeks an order striking this defense and declaring that its marks have a market presence in Utah and Tennessee for the purpose of obtaining an injunction in those states. The court has learned that Buzas Baseball changed its team's name from the Salt Lake Buzz to the Salt Lake Stingers but still uses a bee-like mascot. To the extent Georgia Tech seeks a permanent injunction enjoining the use of the term "Buzz," the court finds that issue to be MOOT and DENIES partial summary judgment seeking an order declaring that Georgia Tech marks have market presence in Utah and Tennessee.

As to Georgia Tech's Yellow Jacket design and Buzas Baseball's thirteenth defense, the court finds there exists a genuine dispute as to an issue of material fact and DENIES partial summary judgment [Doc. No. 139-1]. The court DECLINES to declare that Georgia Tech marks have a market presence in Utah and Tennessee and DECLINES to strike Buzas Baseball's thirteenth defense.

**D. The Defendant's Motion for Summary Judgment**

██ In a trademark infringement action, the plaintiff must show: (1) that its mark is valid and (2) that the defendant's use of the contested mark is likely to cause confusion. *See Dieter v. B & H Industries of Southwest Florida, Inc.*, 880 F.2d 322, 326 (11th Cir.1989). Because Georgia Tech's marks are "incontestable," their validity is conclusively presumed. *See id.* Therefore, the only question before this court is whether there is a likelihood of confusion between the Georgia Tech marks and the marks used by Buzas Baseball.

██ Georgia Tech's claims under 15 U.S.C. § 1114(1)(a), trademark infringement, and 15 U.S.C. § 1125(a), unfair competition, require a showing of likelihood of confusion. *See Dieter*, 880 F.2d at 326; *see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769, 112 S.Ct. 2753, 2758, 120 L.Ed.2d 615 (1992). Georgia Tech's common law claims and its claims

---

**2.** In doing so, the court takes judicial notice of Georgia Tech's U.S. Trademark Registra- tion Nos. 1,456,921 and 1,515,501.

under Georgia's UDPTA also require a showing of likelihood of confusion. *See Ackerman Security Systems, Inc. v. Design Security Systems,* 201 Ga.App. 805, 412 S.E.2d 588 (1991) (using the Eleventh Circuit's seven factor test). Therefore, the court's likelihood of confusion analysis will apply to all of Georgia Tech's claims.

 The Eleventh Circuit uses a seven-factor test in assessing whether a likelihood of confusion exists: (1) Type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' retail outlets (trade channels) and customers; (5) similarity of advertising media; (6) the defendant's intent; and (7) actual confusion. *See Frehling Enterprises, Inc. v. International Select Group, Inc.,* 192 F.3d 1330, 1335 (11th Cir.1999). Of these seven factors, the Eleventh Circuit considers the type of mark and evidence of actual confusion to be the most important. *See Dieter,* 880 F.2d at 326.

### 1. Type of Mark

 "Classifying the type of mark plaintiff has determines whether it is strong or weak." *Frehling,* 192 F.3d at 1335. Strong marks receive greater protection than weak marks. There are four basic categories of marks: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. *See id.* There does not appear to be any dispute in this case that the marks "Buzz" and "Yellow Jacket Design" are arbitrary when used to describe entertainment and athletic contests. *See id.* ("The categories [of marks] are based on the relationship between the name and the service or good it describes."). Arbitrary marks are the strongest of the four categories. *See Frehling,* 192 F.3d at 1336.

 Another indicator of the strength of a mark is whether it is incontestable because incontestability enhances the strength of a mark. *See id.* The Georgia Tech marks are incontestable, therefore, the strength of the marks are enhanced beyond the strength created by the marks being arbitrary. At this point, the marks appear very strong but third party use must also be considered. *See Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.,* 675 F.2d 1160, 1164 (11th Cir.1982).

 "The less that third parties use the mark, the stronger it is, and the more protection it deserves." *See Frehling,* 192 F.3d at 1336. However, the court must examine the significance of any third party uses. The court must consider the "entire name a third party uses, as well as the kind of business in which the user is engaged." *See Safeway Stores, Inc.,* 675 F.2d at 1165. Third party users that incorporate the word "Buzz" or a bee-like design with distinctive additional words, or are engaged in distinctly different businesses, may not significantly diminish the strength of the mark. The defendant has alleged that there are eighty-five different registered trademarks and sixty-seven pending trademark applications that incorporate some variation of the term "Buzz." The only specific examples given, however, are the use of "Buzz" in the movie "Toy Story 2," and its related merchandising, the use of "Buzz" by BellSouth.net for Internet services, the use of a yellow jacket design similar to Georgia Tech's mark by two Georgia High Schools and one Elementary School, and six professional sports teams that use some variation of a bee or yellow jacket design. The first two uses do not affect the strength of the mark because of the way in which the word "Buzz" is used and because of the disparate types of businesses in which they are used. The use of "Buzz" by two High Schools and one Elementary School also has little affect on the strength of the

mark. *See University of Georgia Athletic Association v. Laite,* 756 F.2d 1535, 1545 (11th Cir.1985) (finding that similar third party use had little affect on the strength of the plaintiff's mark). The uses by professional sports teams are relevant but because these teams do not appear to use the word "Buzz," their uses only affect the strength of the "Yellow Jacket Design" not the "Buzz" mark. The relatively common use of a stinging insect as a mascot or team name makes the "Yellow Jacket Design" weaker. Therefore, the court finds that the mark "Buzz" is a strong mark for use on clothing, sweatshirts, and t-shirts, and in conducting athletic contests in a variety of sports, and that the "Yellow Jacket Design" is only somewhat strong for use in conducting athletic contests in a variety of sports.

### 2. Similarity of the Marks

In analyzing the similarity of the marks, "the court compares the marks at issue and considers the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." *Frehling,* 192 F.3d at 1337. The purpose of this analysis is that the more similar the marks are in their sound, appearance, and manner, the more likely it is that a reasonable consumer will be confused as to the source of the product that each mark represents. *See id.* Georgia Tech's mark "Buzz" is identical to Buzas Baseball's mark "Buzz" in sound. The use of an identical word, however, is not dispositive. *See Freedom Savings & Loan Ass'n v. Way,* 757 F.2d 1176 (11th Cir. 1985). Both marks often appear in large block letters, although Buzas Baseball began including the words "Salt Lake" whenever it used the word "Buzz." Further, both marks are used on baseball caps and other merchandise to represent athletic teams. Georgia Tech's "Buzz" is its mascot's name and Buzas Baseball uses "Buzzy" as its mascot's name. The court finds

that the two "Buzz" marks are similar in their sound, their appearance, and the manner in which they are used. As to the mark "Buzz," this factor favors Georgia Tech.

The "Yellow Jacket Design" mark is a yellow and black depiction of a yellow jacket that is somewhat anthropomorphic. Buzas Baseball's mark is blue, green, and yellow, and a more insect-like depiction of a bee or hornet. The appearance is only somewhat similar and it, like the "Buzz" marks, are used on baseball caps and other merchandise to represent athletic teams. The overall impression of the two bee-like marks are that they are only vaguely similar. As to the "Yellow Jacket Design," the similarity of the marks factor is either neutral or favors Buzas Baseball. When the two "Buzz" marks are each used with its corresponding design mark, the combined marks are only vaguely similar, which favors Buzas Baseball. The court, however, finds there is a genuine dispute as to whether the marks are similar.

### 3. *Similarity of the Goods*

"This factor requires a determination as to whether the products are the kind that the public attributes to a single source, not whether or not the purchasing public can readily distinguish between the products of the respective parties." *Frehling,* 192 F.3d at 1338. Georgia Tech is a public college with numerous sports teams that compete nationally on an amateur level, while Buzas Baseball's Salt Lake Buzz is a professional AAA baseball team that competes only in the Pacific Coast League. Both parties use their marks on similar goods such as baseball hats, t-shirts, and other apparel. The court finds that the parties' predominant products, their athletic teams and merchandise, are not similar or dissimilar as a matter of law but, rath-

er, the evidence raises a question of fact as to whether the goods are similar.

### 4. Similarity of the Parties' Retail Outlets (Trade Channels) and Customers

 This factor considers where, how, and to whom the parties products are sold. " 'Dissimilarities between the retail outlets for and the predominant customers of plaintiff's and defendant's goods lessen the possibility of confusion, mistake, or deception.' " *Frehling*, 192 F.3d at 1339 (quoting *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 262 (5th Cir.1980)). Direct competition, while not required, is strong evidence. *See AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531 (11th Cir.1986) (likelihood of confusion is more probable if the products are sold through the same channels to the same purchasers).

Georgia Tech is located in Atlanta, Georgia, conducts most of its athletic contests in Georgia and elsewhere in the Southeast, and sells its merchandise both locally and nationally through mail and telephone order, and via the Internet. Buzas Baseball conducts all of its athletic contests in Utah and the other Western states with teams that are members of the Pacific Coast League. It sells its merchandise at Franklin Covey Field in Salt Lake City, by mail and telephone orders, and via the Internet. While Georgia Tech's sales at its athletic fields and local shops are dissimilar from Buzas Baseball's sales at its home field and local Salt Lake shops, Georgia Tech has presented substantial evidence that its merchandise is sold along with Salt Lake Buzz merchandise at Fanzz Sports Apparel in Salt Lake City, at Colorado Hat Company, and at Hatworld. Georgia Tech has also shown that an Internet web site maintained by Star Struck, Inc. sells both Georgia Tech and Salt Lake Buzz merchandise and even groups its products by type of logo. One group includes the category of animals that con-

tains a sub-category of insects. The court finds that the similarity of the parties' trade channels leans toward a finding of likelihood of confusion.

### 5. Similarity of Advertising Media

 This factor looks to each party's method of advertising. If the plaintiff and the defendant both use the same advertising media, a finding of likelihood of confusion is more probable. *See AmBrit, Inc.*, 812 F.2d at 1542. Like the parties' trade channels, the advertising media used by Georgia Tech and Buzas Baseball is dissimilar at the local level but similar on the national level. The similarity at the national level, however, is limited to a few publications: a catalogue issued by Star Struck, Inc. that includes both Georgia Tech merchandise and Salt Lake Buzz merchandise, and Baseball America, a national baseball magazine. Most of Buzas Baseball's advertising is local. Buzas Baseball advertises in area newspapers, in local magazines such as Utah Business and Park City Media Group, on local television and radio stations, and through direct mail promotions. The court finds there is little similarity in the parties' advertising campaigns, which leans toward a finding of no likelihood of confusion.

### 6. The Defendant's Intent

 If a defendant is shown to have adopted a mark with the intent of causing confusion and deriving a benefit from the plaintiff's business reputation, or if the defendant is shown to have been intentionally blind to such possible confusion, this fact alone may be enough to show a likelihood of confusion. *See Frehling*, 192 F.3d at 1340. Georgia Tech contends that Buzas Baseball knew about Georgia Tech's "Buzz" mark in March 1996, and that it also knew that its own "Buzz" mark would not be registerable

based upon trademark searches conducted for Buzas Baseball that cited Georgia Tech's "Buzz" mark. Georgia Tech also asserts that there is no evidence that Buzas Baseball conducted a trademark search before it began using its "Buzz" mark. Therefore, the court finds that Georgia Tech has shown a genuine dispute as to whether Buzas Baseball was intentionally blind to the possibility of confusion, which could establish that Buzas Baseball intended to benefit from Georgia Tech's marks.

### 7. Actual Confusion

 While evidence of actual confusion is strong evidence of a likelihood of confusion, such evidence is not required. *See Frehling,* 192 F.3d at 1340. Georgia Tech does not submit any instances of actual confusion or anecdotal evidence but, rather, it offers evidence in the form a survey conducted by John A. Bunge that it commissioned. Buzas Baseball has offered its own survey expert, Thomas D. Dupont, PhD., to rebut Georgia Tech's survey evidence. After considering the results of Georgia Tech's survey and Dr. Dupont's expert report, the court finds that there exists a genuine question of material fact as to whether the survey evidence shows actual confusion.

### 8. Result of Seven Factor Likelihood of Confusion Test

Based on the evidence before it, the court cannot find as a matter of law that there is or is not a likelihood of confusion. The court finds there exist several questions of material fact to be resolved by the factfinder, and that without said factfinding, it is impossible to determine whether Buzas Baseball has infringed on Georgia Tech's marks. Therefore, the court hereby DENIES the defendant's motion for summary judgment [Doc. No. 140–1].

### III. CONCLUSION

For the foregoing reasons, the court hereby:

(1) GRANTS in part and DENIES in part the plaintiff's motion for partial summary judgment [Doc. No. 134–1]. The court GRANTS the motion as to the defendant's second, third, fifth, sixth, and eighth defenses and DENIES the motion as to the defendant's twelfth and fourteenth defenses;

(2) GRANTS the plaintiff's motion for summary judgment on the defendant's eleventh defense and on its counterclaim for cancellation [Doc. No. 137–1];

(3) DENIES the plaintiff's motion for partial summary judgment [Doc. No. 139–1]. The court finds that Georgia Tech's marks are valid and that Georgia Tech owns U.S. Trademark Registration Nos. 1,456,921 and 1,515,501. The court also DECLINES to declare that Georgia Tech marks have a market presence in Utah and Tennessee and DECLINES to strike Buzas Baseball's thirteenth defense;

(4) DENIES the defendant's motion for summary judgment [Doc. No. 140–1];

(5) DENIES the plaintiff's motion for discovery sanctions pursuant to Federal Rules of Civil Procedure 26(g) and 37(a)(4) [Doc. No. 167–1]; and

(6) DENIES the plaintiff's motion to strike Tammi Felker, David R. Tucker, and Hillary Buzas–Drammis from the defendant's witness list [Doc. No. 169–1].