880 F.2d 322
 11 U.S.P.Q.2d 1721
 Richard A. DIETER, d/b/a Shutterworld, and Richard A. Dieter
General Contractor, Inc., Plaintiff-Appellant,
Cross-Appellee,
v.
B & H INDUSTRIES OF SOUTHWEST FLORIDA, INC.,
Defendant-Appellee, Cross-Appellant.
 No. 88-3363.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 10, 1989.
 
 1
 David W. Pettis, Jr., Tampa, Fla., for plaintiff-appellant, cross-appellee.
 
 
 2
 Merrill N. Johnson, Naples, Fla., for defendant-appellee, cross-appellant.
 
 
 3
 Appeals from the United States District Court for the Middle District of Florida.
 
 
 4
 Before RONEY, Chief Judge, HILL, Circuit Judge and HOWARD*, Chief District Judge.
 
 Howard, Chief District Judge:
 I. BACKGROUND.[1]
 
 5
 This is a trademark infringement action arising out of two southwest Florida shutter vendors' use of the same name and trademark. Appellant Dieter is the president and sole shareholder of appellant Richard A. Dieter General Contractor, Inc., a Florida corporation (collectively referred to as "Dieter"), headquartered in the Tampa Bay area. Dieter sells several types of shutters, some of which it manufactures. Its products include pre-hung wooden shutter assemblies, which are mostly decorative items intended for indoor use. The wooden shutters which Dieter manufactures are labelled with its registered trademark, which is burned into the wood. Those shutters sold but not manufactured by Dieter are labelled with small silver stickers marked with the name "Shutter-World" in plain block letters, hyphenated.
 
 
 6
 In 1976, Dieter applied for federal trademark registration of a trademark incorporating the name "Shutterworld." The mark consists of the name in script form, superimposed on a large letter "O." The registration states that Dieter first used the mark in 1970, and that it first used the mark in commerce in 1974. In 1983 Dieter supplemented its federal registration with a "combined sections 8 & 15 declaration," filed on Dieter's behalf by Janet E. Hudson as secretary-treasurer. The declaration stated that "Shutterworld, Inc., a Florida corporation" was owner of federal registration number 1,062,778. It stated that the registered mark had been in continuous use in interstate commerce since April 5, 1977 for "pre-hung wooden shutter assemblies," and that the mark was still so used. Dieter has made extensive use of its mark in forms other than the registered design. Dieter has not obtained Florida registration of its mark.
 
 
 7
 Appellee B & H Industries of Southwest Florida, Inc., ("B & H") is headquartered in Fort Meyers, Florida, approximately 120 miles south of Tampa and Largo. B & H sells exterior "insulated roll-down security shutters," which are designed for exterior use as protection against weather and intruders. B & H obtained Florida registration of a mark consisting of the name "Shutterworld" in "neon sign" typeface, with an oversized letter "O," and with the letters "SW" in three line script on a dark background. B & H was refused federal registration of a mark which used the word "Shutterworld" with a large "O" with the letters "SW" inside the "O," on the grounds that such a mark was likely to be confused with Dieter's registered mark. B & H amended its application with affidavit and pictorial evidence intended to show that there was a lack of confusion between its mark and Dieter's. The mark was then deemed "entitled to registration," and was published pursuant to statute. Dieter filed an opposition to registration of that mark.
 
 
 8
 Dieter filed suit against B & H in the Middle District of Florida, alleging trademark infringement. Its complaint included causes of action under the Lanham Act, 15 U.S.C. Secs. 1114, 1125(a); under the Florida common law of unfair competition; and under FLA.STAT.ANN. Sec. 495.151 for damage to business reputation. Dieter sought a permanent injunction against B & H's use of the word "Shutterworld," as well as an accounting for profits, treble damages, and attorney's fees. The case was tried to the district court without a jury. At the close of the trial, the court found that Dieter's mark was valid and enforceable, but that there had been no trademark infringement, because the district court concluded that there was no likelihood of confusion. We disagree and reverse.
 
 
 9
 II. LIKELIHOOD OF CONFUSION.
 
 
 10
 Count One of Dieter's complaint alleged that B & H's mark was a "colorable imitation" of its mark, and that B & H's use of the mark was likely to cause confusion, to cause mistake, or to deceive. In this appeal, Dieter challenges the trial court's finding of no likelihood of confusion. Applying the clearly erroneous standard,[2] a trial court's decision may be reversed when the reviewing court is left with the "definite and firm conviction that a mistake has been committed." Armstrong Cork, 597 F.2d at 501 (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Review of the transcript, the exhibits introduced at the trial of the case, the trial court's opinion, and the arguments by counsel on appeal leaves this Court with the definite conviction that the trial court committed a mistake by finding no likelihood of confusion.
 
 
 11
 In a trademark infringement action, the plaintiff must show, first, that its mark is valid and, second, that the defendant's use of the contested mark is likely to cause confusion. 15 U.S.C. Sec. 1114(1)(a); Burger King Corp. v. Mason, 710 F.2d 1480, 1491 (11th Cir.1983), cert. denied, 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984). Because Dieter's mark is "incontestable" its validity is conclusively presumed, see infra, Part III, and accordingly the only factual issue for the trial court's determination was whether B & H's use of the "Shutterworld" mark was likely to cause confusion. Determination of likelihood of confusion requires analysis of the following seven factors: (1) type of mark, (2) similarity of mark, (3) similarity of the products the marks represent, (4) similarity of the parties' retail outlets and customers, (5) similarity of advertising media used, (6) defendant's intent and (7) actual confusion.[3] Freedom Sav. and Loan Ass'n v. Way, 757 F.2d 1176, 1182 (11th Cir.1985), cert. denied, 474 U.S. 845, 106 S.Ct. 134, 88 L.Ed.2d 110 (1985); University of Georgia Athletic Ass'n v. Laite, 756 F.2d 1535 (11th Cir.1985); Wesco Mfg. v. Tropical Attractions of Palm Beach, 833 F.2d 1484, 1488 (11th Cir.1984); Sun Banks of Fla. v. Sun Fed. Sav. & Loan, 651 F.2d 311 (5th Cir.1981)[4]. Of these factors, the type of mark and the evidence of actual confusion are the most important in this circuit. Freedom Sav., 757 F.2d at 1186. The trial court used this seven factor analysis and concluded that B & H's use of the mark was not likely to cause confusion.[5] Dieter challenges four specific points in the trial court's opinion: (1) its finding that Dieter's mark had not acquired secondary meaning, (2) its finding that the retail strategies of Dieter and B & H were not similar, (3) its finding that the businesses of Dieter and B & H were geographically separate, and (4) its finding that B & H's continued use of the "Shutterworld" mark was in good faith.
 
 
 12
 The trial court's finding that Dieter's mark lacked secondary meaning relates to factor one, the type of mark. Evaluating Dieter's mark, the trial court found the mark to be merely descriptive, and found that Dieter had not established that its mark had acquired secondary meaning. Review of the transcript and the exhibits shows that although there was some evidence that certain homeowners equated the "Shutterworld" mark with Dieter's products, such evidence was second-hand, and came from a witness whom the trial court found to lack credibility. Accordingly, the trial court did not err in finding that Dieter had not established secondary meaning for the "Shutterworld" mark. However, our holding in Part III of this opinion renders the trial court's findings on the existence or non-existence of secondary meaning moot.
 
 
 13
 Dieter also challenges the trial court's analysis under factor four, the similarity of the parties' retail outlets and customers. Although the trial court found that the parties' customers were similar, it found that their retail strategies were dissimilar and concluded that this difference militated against confusion. This finding was premised on the evidence at trial, which tended to show that while Dieter made most of its sales from retail outlets and through dealers, B & H made its sales at customers' houses. This Court agrees with the trial court's determination of the facts, but disagrees as to the effect of those facts on this part of the analysis. These shutter purchasers are homeowners in a relatively small geographic area, and this Court is not convinced that the difference between the retail strategies of Dieter and B & H is so great as to preclude confusion. Customers and potential customers might well think that Dieter and B & H are one and the same entity, named "Shutterworld," which sold its shutters, both exterior and interior, through several media. The Court finds that the similarity of the parties' customers and retail outlets is so strong as to be likely to cause confusion, and accordingly, the district court's finding on factor four is clearly erroneous.
 
 
 14
 In its analysis of factor five, the similarity of advertising media used by the parties, the trial court found that the businesses of Dieter and B & H were geographically separate and that there was no medium in which the plaintiff and the defendant had advertised simultaneously. Consideration of these two facts led the district court to conclude that the geographic separation between the two parties decreased the likelihood of confusion between Dieter and B & H. We disagree with that conclusion. Dieter and B & H are both located in the southwest quadrant of the state of Florida, and it is likely that Dieter's customers would be exposed to B & H's advertising, given the relatively small geographic area in which the parties are found, and the likely overlap of advertising markets. If federal trademark registration is to have any value, the Court cannot allow trademark protection to be circumscribed to the extent urged by B & H. The court finds that the geographic separation of the two businesses is not substantial. Accordingly, the district court's conclusion that the geographical separation of the two parties obviated the likelihood of confusion is clearly erroneous.
 
 
 15
 In its analysis of factor six, the defendant's intent in using the mark, the trial court found that although B & H continued to use the "Shutterworld" mark after it became aware of Dieter's claims, it did so in good faith. After careful review of the transcript, and the exhibits admitted at the trial of the action, the Court concludes that the trial court did not err on this point.
 
 
 16
 After considering all of the facts, the Court finds that there is a substantial likelihood of confusion. Accordingly, the trial court's determination to the contrary was clearly erroneous.
 
 
 17
 III. INCONTESTABILITY.
 
 
 18
 Dieter contends on appeal that the trial court imposed a requirement that it prove secondary meaning in a geographic area as a prerequisite to enforcing an incontestable registration against a junior user in the same geographic area, a rule that Dieter points out is not required by controlling law or case authority. Although this Court agrees with Dieter that such a requirement would be contrary to the law of this circuit, we do not find that the trial court imposed such a requirement.
 
 
 19
 Terms which may be registered as trademarks fall into four categories of strength: (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary. American Television v. American Communications, 810 F.2d 1546, 1548 (11th Cir.1987); University of Georgia Athletic Ass'n v. Laite, 756 F.2d 1535, 1540 (11th Cir.1985). "Generic" terms are those which name "the genus or class of which an individual article or service is but a member." Vision Ctr. v. Optiks, 596 F.2d 111, 115 (5th Cir.1979), cert. denied, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980). "Descriptive" terms "identify a characteristic or quality of an article or service." Id. "Suggestive" terms suggest characteristics of the goods and services and "require an effort of the imagination by the consumer in order to be understood as descriptive." Id. at 115, 116 (citing General Shoe Corp. v. Rosen, 111 F.2d 95, 98 (4th Cir.1940). "Fanciful" or "arbitrary" terms are words or phrases that bear no direct relationship to the product. Vision Ctr., 596 F.2d at 116. Generic terms represent the weaker end of the spectrum, and arbitrary terms represent the stronger.
 
 
 20
 Generic terms may never be registered as trademarks under the Lanham Act. 15 U.S.C. Sec. 1052(e). Descriptive terms may not be registered as trademarks under the Lanham Act, unless the holder shows that the mark has acquired "secondary meaning." 15 U.S.C. Sec. 1052(e)(1), (f); Citibank, N.A., v. Citibanc Group, Inc., 724 F.2d 1540, 1549 (11th Cir.1984); Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 10 (2d Cir.1976). Proof of secondary meaning in a trademark requires a showing that the mark has become distinctive of the trademark holder's product. Five years after registering a mark, the holder may file the affidavit required by Sec. 1065 and have its mark declared "incontestable." 15 U.S.C. Sec. 1065(3). Once a mark has become "incontestable," its validity is presumed, subject to certain enumerated defenses which are not applicable in this action. 15 U.S.C. Sec. 1065. Once a mark has achieved "incontestable" status, its validity cannot be challenged on the grounds that it is merely descriptive, even if the challenger can show that the mark was improperly registered initially:[6]
 
 
 21
 Thus, Sec. 33(a) [would allow challenge to a] mark as merely descriptive if the mark had not become incontestable. With respect to incontestable marks, however, Sec. 33(b) provides that registration is conclusive evidence of the registrant's exclusive right to use the mark, subject to the conditions of Sec. 15 and the seven defenses enumerated in Sec. 33(b) itself. Mere descriptiveness is not recognized by either Sec. 15 or 33(b) as a basis for challenging an incontestable mark.
 
 
 22
 Park'N'Fly, Inc. v. Dollar Park and Fly, 469 U.S. 189, 105 S.Ct. 658, 663, 83 L.Ed.2d 582 (1985); See also Soweco, Inc. v. Shell Oil Co., 617 F.2d 1178, 1185 (5th Cir.1980), cert. denied 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981), (citing Union Carbide Corp. v. Ever-Ready, Inc., 531 F.2d 366 (7 Cir.), cert. denied, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976)). Dieter's mark is incontestable, and therefore valid.
 
 
 23
 As stated above, a plaintiff seeking to enjoin another's use of a trademark must show, first, that its mark was valid and, second, that defendant's use of the challenged mark created a likelihood of confusion. Burger King, 710 F.2d at 1491. The trial court noted that Dieter's mark was incontestable and that Dieter had established the first requirement. The second part of the test, "likelihood of confusion," is determined by reference to the seven factor analysis discussed above. Analysis of the first of the seven factors requires the court to determine the type of mark for which the plaintiff seeks protection. In Park'N'Fly, the issue presented to the Supreme Court involved only the validity of the mark. Whether "incontestable" status affects the strength of the mark for purposes of "likelihood of confusion" determinations was left open to question by Park'N'Fly. This is an issue of first impression in this circuit.
 
 
 24
 In the instant action, the lower court evaluated the strength of Dieter's mark without reference to its "incontestable" status, and determined that Dieter's mark was merely descriptive. In doing so, the trial court relied on a district court case from Illinois which held that validity and "likelihood of confusion" are distinct and separate inquiries, and that the "incontestable" status of a plaintiff's mark has no bearing on the "likelihood of confusion" issue. Source Services Corp. v. Chicagoland Jobsource, Inc., 643 F.Supp. 1523, 1532 (N.D.Ill.1986) (relying on Union Carbide ). Application of this rule by the trial court in Dieter's case did not impose a requirement that Dieter prove secondary meaning in order to enforce its mark. Rather, the trial court, in the absence of controlling precedent, followed the decision of the Illinois district court and concluded that the "incontestable" status of Dieter's mark had no relevance to the likelihood of confusion analysis. After careful consideration of the district court's position, as well as the case law in this circuit, we decline to follow the Illinois district court. We hold that incontestable status is a factor to be taken into consideration in likelihood of confusion analysis. Because Dieter's mark is incontestable, then it is presumed to be at least descriptive with secondary meaning, and therefore a relatively strong mark. Accordingly, the district court's conclusion that Dieter's mark was merely descriptive, and not entitled to strong protection is REVERSED, and the action is REMANDED to the district court for further proceedings consistent with this opinion.
 
 
 25
 IV. STATE LAW CLAIMS.
 
 
 26
 Dieter's complaint also stated claims for unfair competition under 15 U.S.C. Sec. 1125(a), unfair competition under Florida common law, and dilution under FLA.STATS. 495.151. Because the district court's ruling on these points was based on its conclusion that there was no likelihood of confusion, we also REVERSE and REMAND on these three issues for proceedings consistent with this opinion.
 
 
 27
 V. ATTORNEY'S FEES.
 
 
 28
 At the close of the trial B & H requested an award of attorney's fees pursuant to 15 U.S.C. Sec. 1117, which allows an award of attorney's fees to the prevailing party in "exceptional cases," in the discretion of the trial judge. The legislative history indicates that a court should only award attorney fees in cases "characterized as malicious, fraudulent, deliberate and willful." St. Charles Mfg. Co. v. Mercer, 737 F.2d 891, 894 (11th Cir.1983) (quoting S.REP. No. 93-1400, 93rd CONG., 2nd SESS., reprinted in 1974 U.S.CODE CONG. & AD.NEWS 7132, 7136.) See also, Safeway Stores, Inc. v. Safeway Discount Drugs, 675 F.2d 1160, 1169 (11th Cir.1982) (citations omitted). Even if the trial court finds that the circumstances of the case are, in fact, exceptional, the decision whether to award attorney's fees is still discretionary. Jellibeans, Inc. v. Skating Clubs of Georgia, Inc., 716 F.2d 833, 846 (11th Cir.1983). The trial court's refusal to grant attorney's fees in the instant action was not an abuse of discretion. Furthermore, because our ruling today reverses the trial court's ruling, B & H is no longer a prevailing party, and is therefore not entitled to attorney's fees at this point in the proceedings.
 
 
 29
 Dieter has requested an award of attorney's fees and expenses incurred in responding to B & H's appeal of the trial court's denial of same. Such request is DENIED.
 
 
 30
 VI. CONCLUSION.
 
 
 31
 For the foregoing reasons, the judgment of the district court is REVERSED and this action is REMANDED for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Alex T. Howard, Jr. U.S. District Judge, Southern District of Alabama, sitting by designation
 
 
 [1]
 This statement of the facts is taken largely from the trial court's opinion, which is reported as Dieter v. B & H Industries, 683 F.Supp. 1345 (M.D.Fla.1988)
 
 
 [2]
 Determination of "likelihood of confusion" is a factual issue which is reviewed under the "clearly erroneous" standard of Federal Rule of Civil Procedure 52(a). Armstrong Cork Co. v. World Carpets, 597 F.2d 496, 501 (5th Cir.1979), cert. denied, 444 U.S. 932, 100 S.Ct. 277, 62 L.Ed.2d 190 (1979)
 
 
 [3]
 There are no hard and fast rules as to how much evidence of confusion is enough. Rather, when looking at the evidence the reviewing court must take into consideration the circumstances surrounding each particular case. Jellibeans, Inc. v. Skating Clubs of Georgia, Inc., 716 F.2d 833, 844 (11th Cir.1983)
 
 
 [4]
 The Eleventh Circuit, in the en banc decision Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981
 
 
 [5]
 See Dieter v. B & H Industries, 683 F.Supp. 1345 (M.D.Fla.1988)
 
 
 [6]
 The Court notes that this creates a potential problem in the Lanham Act scheme if a mark is improperly allowed initial registration. However, this problem is not one that is susceptible to judicial solution. Park'N'Fly noted that the courts' equitable power to "rectify the register," 15 U.S.C. Sec. 1119, must be subject to the legislative provisions concerning "incontestability," whether or not the Lanham Act provides sufficient protection against improper registration of a merely descriptive mark
 Park'N'Fly, Inc. v. Dollar Park and Fly, 469 U.S. 189, 105 S.Ct. 658, 666, 83 L.Ed.2d 582 (1985).