**Seiko Kabushiki KAISHA d/b/a Seiko Corporation, Plaintiff,**

v.

**SWISS WATCH INTERNATIONAL, INC., Lior Ben–Shmuel, and Elihu Ben–Shmuel, Defendants.**

No. 01CV6732.

United States District Court, S.D. Florida.

Feb. 4, 2002.

Richard Brian Simring, Stroock Stroock & Lavin, Miami, FL, Glenn Mitchell, Lawrence Rosenthal, Kiersten M. Skog, Stroock Stroock & Lavan, New York, NY, for Seiko Kabushiki Kaisha dba Seiko Corporation, plaintiffs.

David Philip Milian, Kozyak Tropin & Throckmorton, Miami, FL, for Swiss Watch International, Inc., Lior Ben–Shmuel, Elihu Ben–Shmuel, defendants.

## ORDER ADOPTING REPORT AND RECOMMENDATION

LENARD, District Judge.

**THIS CAUSE** is before the Court on the Report and Recommendation of U.S. Magistrate Judge William C. Turnoff on Plaintiff's Motion for Preliminary Injunction, filed September 14, 2001. (D.E.51.) Plaintiff Seiko Kabushiki Kaisha, d/b/a/ Seiko Corporation, filed Objections on September 28, 2001. (D.E.58.) Defendants Swiss Watch International, Inc., Lior Ben–Shmuel and Eliahu Ben–Shmuel filed a Response on October 31, 2001. (D.E.70.) Plaintiff filed a Reply on November 7, 2001. (D.E.73.) Based on a *de novo* review of the record, the Court finds as follows.

### I. Introduction

Plaintiff has moved for a preliminary injunction preventing Defendants from manufacturing or selling watch boxes bearing reproductions of Plaintiff's SEIKO, SEIKO (stylized), and PULSAR trademarks, including an order requiring Defendants to deliver up their counterfeit goods, and for an expedited discovery order. Plaintiff owns a number of federal registrations involving the SEIKO and PULSAR trademarks, most of which pertain to watches and clocks. Plaintiff also owns a registration for SEIKO "watch boxes not made of metal," U.S. Trademark Registration 1,729,408. Plaintiff alleges that Defendants are engaged in the sale and distribution of counterfeit watch boxes bearing reproductions of the SEIKO and PULSAR trademarks.

Defendants concede that they have applied the SEIKO and PULSAR marks to their watch boxes. Plaintiff claims that it first became aware of Defendants' activities as a result of seizures conducted by Plaintiff of counterfeit SEIKO watches and related goods and documents pursuant to an order of this Court in an action filed in July of 2000. Defendants allege that Plaintiff has known of Defendants' activities for sixteen years, reaching back to a 1985 lawsuit brought by Plaintiff against Defendant Eliahu Ben–Shmuel. Defendants contend that Plaintiff is barred from obtaining a preliminary injunction due to the doctrine of laches, and because Plaintiff has not met the elements needed to obtain preliminary injunctive relief.

On November 9, 2000, Plaintiff's counsel sent a letter to Defendants demanding that Defendants cease and desist from selling reproductions of Plaintiff's SEIKO and SEIKO (stylized) trademarks. After correspondence and conversations with Defendants regarding the alleged differences between the parties' watch boxes, Plaintiff sent a second cease-and-desist letter on February 15, 2001, demanding that Defendants provide written confirmation that they would cease and desist from selling unauthorized watch box reproductions. Defendants did not respond as Plaintiff requested.

On May 2, 2001, Plaintiffs filed a Complaint, along with a Motion for Preliminary Injunction and Expedited Discovery. The Motion was referred to Magistrate Turnoff, who recommended that the Court deny the Motion because Plaintiff has not met the standard for obtaining a preliminary injunction.

## II. Preliminary Injunction Standard

■ A preliminary injunction is "an extraordinary and drastic remedy" that should be granted only if the moving party has clearly established four elements: (1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1306 (11th Cir.1998).

## III. Analysis

### A. Likelihood of Success on the Merits

■ To demonstrate a likelihood of success on the merits under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), Plaintiff must show: (1) the validity of its marks; and (2) a likelihood of confusion as to the source or sponsorship of Defendant's products. *See Dieter v. B & H Ind. of Southwest Fla., Inc.,* 880 F.2d 322, 326 (11th Cir.1989). Plaintiff contends that, under Sections 15 and 33(b) of the Lanham Act, 15 U.S.C. §§ 1065 and 1115(b), its Seiko and Pulsar marks are incontestably valid. However, as Judge Turnoff found, Plaintiff has only shown that its SEIKO trademark on "watch boxes not of metal" (U.S. Trademark Registration 1,729,408) is likely valid as a matter of law. Plaintiff has not established that this trademark is "incontestible," because it has not submitted a certificate of inconstestability pursuant to 15 U.S.C. § 1065. Moreover, Plaintiff has not submitted any evidence of a valid mark for PULSAR watch boxes.

■ To determine whether a likelihood of confusion exists, the Eleventh Circuit requires a balancing of the following factors: (1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' customers and retail outlets; (5) similarity of advertising campaigns; (6) defendant's intent; and (7) evidence of actual

confusion. *Dieter*, 880 F.2d at 326; *Jellibeans, Inc. v. Skating Clubs of Ga.*, 716 F.2d 833, 840 (11th Cir.1983). Generally, the type of mark and evidence of actual confusion are the most important factors. *Dieter*, 880 F.2d at 326. However, a court must consider the circumstances of each particular case, and evaluate the weight to be accorded to individual subsidiary facts, in order to make its ultimate factual decision. *Jellibeans*, 716 F.2d at 840 n. 17.

Judge Turnoff found that Plaintiff's submissions indicate a strength in SEIKO watch trademarks, but do not indicate the same strength in SEIKO watch box trademarks, or that customers would likely be confused by Defendant's sale of genuine SEIKO and/or PULSAR timepieces in boxes marked SEIKO or PULSAR. Plaintiff asserts that it has common law trademarks in the mark for SEIKO and PULSAR watch boxes, based on actual prior use, and that even if it did not, it would be successful in establishing trademark infringement under the "related goods" doctrine. (Obj. at 9–10.) Plaintiff contends that, because it owns incontestable marks on PULSAR watches and clocks, it may enjoin the use of the PULSAR mark on watch boxes because watch boxes are related to watches. (*Id.*)

■ In the Eleventh Circuit, the test for "related goods" is whether the buying public would reasonably think that two goods came from the same source, or were affiliated with, connected with, or sponsored by, the trademark owner. *Tally–Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1023 (11th Cir.1989). Plaintiff has gone to great length to document the fame of the SEIKO and PULSAR names, but has offered only conclusory allegations, with no proof, that the public assumes that a watch comes from the same manufacturer as the watch box in which it is sold. The standard for an injunction is high, and the Court finds that Plaintiff has not met

its burden of showing that consumers would likely be confused by Defendant's sale of genuine SEIKO or PULSAR watches in boxes marked "SEIKO" or "PULSAR".

■ The most persuasive evidence of a substantial likelihood of confusion is proof of actual confusion. *Alliance Metals, Inc. of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 907 (11th Cir.2000). Plaintiff has presented no evidence of actual confusion. Additionally, Plaintiff has failed to establish a similarity of customers and retail outlets or similarity of advertising campaigns. Plaintiff claims it is unable to submit such evidence due to Defendants' refusal to comply with Plaintiff's discovery requests. At the hearing before Judge Turnoff, however, Plaintiff rested on its pre-hearing submissions, without producing any affidavits, witnesses, or exhibits. (7/6/01 Hrg. Tr. at 10.) This simply demonstrates that a preliminary injunction is inappropriate at this juncture, and that more discovery is necessary before the issues may be resolved.

■ Alternatively, a likelihood of confusion can be found as a matter of law if Plaintiff shows that Defendants intended to derive benefit from Plaintiff's trademark. *Babbit Elec., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1179 (11th Cir.1994). Plaintiff argues that Defendants knowingly and willfully affixed counterfeit reproductions of SEIKO and PULSAR marks to watch boxes, as shown by Defendants' admissions to Plaintiff's counsel and Defendants' offer to sell an investigator watch boxes bearing the SEIKO and PULSAR marks. (Obj. at 13.) In fact, Defendant Eli Ben–Shmuel told Plaintiff's counsel that he believed he was entitled to sell the watch boxes because they differed in color and style from the watch boxes sold by Seiko Corporation, and the trademarks SEIKO and PULSAR applied by Defen-

dants to the goods appear in different logo formats than the logo formats used by Seiko Corporation. (Skog Dec. ¶ 11.) Moreover, unlike cases such as *Babbit,* where defendants intentionally mislabeled a product in an attempt to mislead the public to believe that the product inside the box is genuine, Defendants were selling genuine SEIKO and PULSAR watches inside the allegedly counterfeited boxes. *Cf. Amstar Corp. v. Domino's Pizza Inc.,* 615 F.2d 252 (5th Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980) (noting that bad faith usually involves an attempt to "pass off" a party's product as the product of another), *cited with approval in Babbit,* 38 F.3d at 1179. Thus, the Court finds that Plaintiff has not submitted evidence of Defendant's intent sufficient to establish a likelihood of confusion.

Based on the Court's review of all the factors and the surrounding circumstances, Plaintiff has failed to meet its burden of proving a substantial likelihood of success on the merits.

## B. Irreparable Injury

 "[P]reliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights." *Citibank, N.A. v. Citytrust,* 756 F.2d 273, 276 (2d Cir.1985). Because a preliminary injunction is an extraordinary form of relief, Plaintiff must demonstrate that it will suffer irreparable injury unless the injunction issues. *See McDonald's Corp.,* 147 F.3d at 1306. Financial damage alone is insufficient to warrant injunctive relief. *Snook v. Trust Co. of Ga. Bank of Savannah, N.A.,* 909 F.2d 480, 487 (11th Cir.1990) (quoting *Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough...")).

 In trademark cases, "a sufficiently strong showing of likelihood of confusion ... may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp.,* 147 F.3d at 1310. To obtain a preliminary injunction, however, a plaintiff must demonstrate a particularly high likelihood of confusion or potential danger to customers' health and safety. *See id.* ("McDonald's faces damage to its own reputation and loss of customers caused by the [Defendants'] distribution of an allegedly inferior (and possibly dangerous) product held out to be McDonald's,"); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.,* 51 F.3d 982, 986 (11th Cir.1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales.")

By contrast, this Court has not found a substantial likelihood of confusion, nor has it found that Defendant's watch boxes are inferior to Plaintiff's. Judge Turnoff found that Defendants' watch boxes differed from Plaintiff's in kind, but not in quality. (7/6/01 Hrg. Tr. at 7.) Significantly, Defendants are not selling counterfeit watches; they are selling genuine SEIKO and PULSAR watches in watch boxes that are not apparently inferior to genuine SEIKO and PULSAR watch boxes. At the hearing, Judge Turnoff posited that customers care about buying watches, rather than watch boxes, and Plaintiff's counsel offered no evidence to the contrary. (7/6/01 Hrg. Tr. at 5.) Accordingly, the Court finds that the threat to Plaintiff's goodwill and reputation is minimal, and that Plaintiff may be compensated sufficiently with monetary damages.

 Furthermore, a plaintiff's delay in seeking an injunction in a trademark case "tends to neutralize any presumption that infringement alone will cause irrepa-

rable harm pending trial, and such delay alone may justify denial of a preliminary injunction for trademark infringement." *Citibank*, 756 F.2d at 276. "Although a particular period of delay may not rise to the level of laches and thereby bar a permanent injunction, it may still indicate an absence of the kind of irreparable harm required to support a preliminary injunction." *Id.* (holding excessive a delay of ten weeks from direct notice and nine months after press release); *Lanvin, Inc. v. Colonia, Inc.*, 739 F.Supp. 182, 192 (S.D.N.Y. 1990) (denying preliminary injunction after seven-month delay); *Comic Strip, Inc. v. Fox Television Stations, Inc.*, 710 F.Supp. 976, 981 (S.D.N.Y.1989) (seven-month delay).

In the instant case, Plaintiff admits to knowing of Defendants' activities in the summer of 2000. (7/6/01 Hrg. Tr. at 7–9.) Yet counsel for Plaintiff waited until November 9, 2000 to send the first cease-and-desist letter to Defendants. More than three months later, on February 15, 2001, Plaintiff sent a second cease-and-desist letter. Plaintiff waited until May 2, 2001, almost a full year after it admits to knowing about Defendant's activities, to file this lawsuit. Even giving Plaintiff credit for attempting to reach a settlement without litigation, there remains a three-month delay between Plaintiff's last communication with Defendants and commencement of this suit. Plaintiff's dilatory prosecution of its rights somewhat vitiates the notion of irreparable harm. *See Comic Strip. Inc.*, 710 F.Supp. at 981 (three-month delay since parties' last communication). The Court finds that this unexplained delay undercuts any sense of urgency and, therefore, Plaintiff has failed to demonstrate sufficient need for a preliminary injunction.

## IV. Conclusion

The standard for injunctive relief is stringent because the nature of the relief is extraordinary. Even though Plaintiff might ultimately prevail at trial, the Court finds that Plaintiff has not shown a likelihood of success on the merits or that it will suffer irreparable harm without the injunction. In particular, Plaintiff's delay in filing this action undercuts any sense of urgency and demonstrates that a preliminary injunction is not warranted. Accordingly, it is

**ORDERED AND ADJUDGED that:**

1. The Report and Recommendation of U.S. Magistrate Judge William C. Turnoff on Plaintiff's Motion for Preliminary Injunction (D.E.51), filed September 14, 2001, is **ADOPTED.**

2. The Motion for Preliminary Injunction and Expedited Discovery (D.E.5), filed May 2, 2001, by Plaintiff Seiko Kabushiki Kaisha d/b/a Seiko Corporation, is **DENIED**.

## *REPORT AND RECOMMENDATION*

TURNOFF, United States Magistrate Judge.

This Cause comes before the undersigned for a Report and Recommendation on Plaintiff's Motion for a Preliminary Injunction (D.E. 5). Oral argument on the Motion was held on July 6, 2001. The undersigned, having considered the arguments of counsel, the submissions of all parties, and being fully advised in the premises, RESPECTFULLY RECOMMENDS that the Court deny Plaintiff's Motion for a Preliminary Injunction.

## *BACKGROUND*

Plaintiff, Seiko Kabushiki Kaisha d/b/a Seiko Corporation ("Seiko"), moves for a preliminary injunction preventing Defendants, Swiss Watch International, Inc., Eliahu Ben–Shmuel and Lior Ben–Shmuel ("Defendants"), from manufacturing or selling watch boxes bearing reproductions

of Plaintiff's federally-registered Seiko, Seiko (stylized) and PULSAR trademarks. Plaintiff seeks an injunction on all Counts of its Complaint, specifically, Count I—Trademark Infringement Under Section 32 of the Lanham Act, 15 U.S.C. § 1114; Count II—Unfair Competition Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); Count III—Contributory Infringement; Count IV—Trademark Dilution Under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); Count V—Common Law Trademark Infringement; Count VI—Common Law Unfair Competition; Count VII—Violation of Federal Anti–Dilution Statute. Plaintiff owns a number of federal registrations involving the SEIKO and PULSAR trademarks. Many of Plaintiff's federal registrations cover watches and clocks. In the case of the SEIKO mark, Plaintiff also has a federal registration for watch boxes not made of metal.

Plaintiff alleges that Defendants are engaged in the sale and distribution of counterfeit watch boxes bearing reproductions of the SEIKO and PULSAR trademarks. Defendants concede that they applied the SEIKO and PULSAR marks to their watch boxes. Although Plaintiff does not allege that Defendants are selling counterfeit watches, Plaintiff alleges that Defendants' customers include sellers of counterfeit SEIKO or PULSAR watches who use Defendants' counterfeit watch boxes to give their counterfeit watches "an added imprimatur of genuineness." (D.E. 6 at 7.) Plaintiff alleges that it first became aware of Defendants' activities as a result of seizures conducted by Plaintiff of counterfeit SEIKO watches and documents pursuant to an order of this Court in a separate action filed against other entities in July of 2000. Defendants contest this point, alleging that Plaintiff has known of Defendants' activities for 16 years and is thus precluded from attaining injunctive relief due to the doctrine of laches and because Plaintiff

has not met the elements needed to obtain preliminary injunctive relief.

On November 9, 2000, counsel for Plaintiff sent a letter to Defendants demanding that Defendants cease and desist from selling reproductions of Plaintiff's SEIKO and SEIKO (stylized) trademarks. After conversations and correspondence with Defendants regarding the alleged differences between Defendants' watch boxes and Plaintiff's watch boxes, Plaintiff sent a second cease and desist letter on February 15, 2001, demanding that Defendants provide written confirmation that they cease and desist from selling unauthorized watch box reproductions. Defendants did not provide such a letter, and Plaintiff filed suit.

## ANALYSIS

A preliminary injunction is an extraordinary and drastic remedy and should not be granted unless the movant meets its burden of persuasion on the following four factors: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury absent the injunction; (3) that the threatened injury to the movant outweighs the threatened harm an injunction may cause; and (4) that granting the preliminary injunction will not disserve the public interest. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *Johnson v. United States Dep't of Agriculture*, 734 F.2d 774, 781 (11th Cir. 1984); *West Point–Pepperell, Inc. v. Donovan*, 689 F.2d 950, 956 (11th Cir.1982). Courts in this Circuit will not issue a preliminary injunction where the moving party fails to meet its burden of proof on each of the four factors. *Tally–Ho, Inc. v. Coast Community College Dist.*, 889 F.2d 1018, 1022 (11th Cir.1989); *see also Salsbury Labs., Inc. v. Merieux Labs., Inc.*, 908 F.2d 706, 708 n. 2 (11th Cir.1990) (preliminary injunction denied because

movant failed to show threat of irreparable harm although it established a substantial likelihood of success on the merits).

Even though Plaintiff may succeed at a trial on the merits, Plaintiff's motion and submissions fail to demonstrate the necessary factors required for the issuance of a preliminary injunction. Specifically, Plaintiff has failed to prove that it is likely to succeed on the merits of this action. In order for Plaintiff to succeed on the merits, under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) (Count I), Plaintiff must show that its marks are valid and that Defendants' conduct is likely to cause confusion as to the source or sponsorship of Defendants' products. *See Dieter v. B & H Ind. of Southwest Fl., Inc.*, 880 F.2d 322, 326 (11th Cir.1989). Although Plaintiff can likely prove that its SEIKO trademark on watch boxes not made of metal is valid as a matter of law, it has not shown a valid PULSAR trademark on watch boxes, and it has further failed in its burden to show that Defendants' use of the SEIKO trademark for its watch boxes creates a likelihood of confusion. In this Circuit, likelihood of confusion is determined by a balancing test consisting of the following factors: (1) the strength of the Plaintiff's mark; (2) the similarity of the marks; (3) the similarity of the products; (4) the similarity of customers and similar retail outlets; (5) the similarity of advertising campaigns; (6) the defendant's intent; and (7) evidence of actual confusion. *Id.; Jellibeans, Inc. v. Skating Clubs of Ga., Inc.*, 716 F.2d 833, 840 (11th Cir.1983). Here, Plaintiff's verified submissions fail to establish a majority of these factors. The submissions indicate a strength in Plaintiff's SEIKO watch trademarks, but do not indicate the same strength in the SEIKO watch box trademark or that customers would likely be confused by Defendants' sale of genuine SEIKO and/or PULSAR timepieces in boxes marked SEIKO and/or PULSAR. The submissions further fail to establish the similarity of customers and similar retail outlets, the similarity of advertising campaigns or the Defendants' intent. Accordingly, Plaintiff has failed to meet its burden of proving a substantial likelihood of success on the merits.[1]

Furthermore, Plaintiff has not made the required showing of irreparable injury required to issue an injunction. The irreparable harm that Plaintiff claims will occur if an injunction is not issued could be remedied through a judgment for monetary damages or similar remedy. Such harm is not irreparable. *See, e.g., Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1530 (11th Cir.1994). It has come to the undersigned's attention that Plaintiff was aware of Defendants' activities for almost one year prior to filing suit and perhaps for much longer, thereby demonstrating a lack of need for speedy action and further justifying a denial of a preliminary injunction. *See Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2nd Cir.1985); *Lanvin Inc. v. Colonia, Inc.*, 739 F.Supp. 182, 192 (S.D.N.Y.1990); *Century Time Ltd. v. Interchron Ltd.*, 729 F.Supp. 366, 369 (S.D.N.Y.1990); *The Comic Strip v. Fox Television Stations, Inc.*, 710 F.Supp. 976, 981 (S.D.N.Y.1989).

Accordingly, IT IS HEREBY RESPECTFULLY RECOMMENDED THAT Plaintiff's Motion for a Preliminary Injunction (D.E.5) be DENIED.

---

1. Plaintiff has also failed to carry its burden of persuasion to show a substantial likelihood of success on the merits as to its remaining counts given that Plaintiff only cursorily addresses these counts in its Motion and because, to the extent these underlying counts also require a showing of "likelihood of confusion," Plaintiff has failed to make such a showing. Thus, an injunction is not warranted based on any of the remaining counts.

Pursuant to S.D. Fla. Magistrate Rule 4(b), the parties may serve and file written objections with the Honorable Joan A. Lenard, United States District Judge, within ten (10) days after being served with a copy of this Report and Recommendation. Failure to file objections timely shall bar the parties from attacking on appeal any factual findings contained herein. *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir.1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir.1988).

Sept. 9, 2001.