[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 19-13105, 19-14317
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cv-02582-TWT


THE MOST WORSHIPFUL NATIONAL
GRAND LODGE, FREE AND ACCEPTED
ANCIENT YORKRITE MASONS, PRINCE
HALL ORIGIN NATIONAL COMPACT,
U.S.A.,

Plaintiff-Appellant,

versus


UNITED GRAND LODGE GA AF & AYM, INC.,
CRAIG MITCHELL,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(May 12, 2020)

Before GRANT, LUCK, and TJOFLAT, Circuit Judges.

PER CURIAM:

This consolidated case stems from a trademark infringement suit brought by plaintiff The Most Worshipful National Grand Lodge, Free and Accepted Ancient Yorkrite Masons, Prince Hall Origin National Compact, U.S.A, ("NGL") against United Grand Lodge GA AG & AYM, Inc. ("United Grand Lodge") and Craig Mitchell.  NGL appeals the District Court's grant of defendants' motion for summary judgment and motion for attorneys' fees.  We affirm the District Court's two orders.

I.

A brief recitation of the factual circumstances of this lawsuit is warranted. NGL is a Masonic organization that oversees and manages subordinate "lodges" located across the country.  Craig Mitchell is a former member of one such subordinate lodge, the Smooth Ashlar Grand Lodge, located in the state of Georgia.  Because of actions that Mitchell took as part of his role as a member of Smooth Ashlar Grand Lodge, he was suspended, and later expelled, from the lodge by NGL in January of 2015.  After being expelled from NGL, Mitchell became Grand Master of the United Grand Lodge GA, AF & AYM, a Masonic organization incorporated in Georgia in February of 2015 and unaffiliated with NGL.  Mitchell admits that he helped to come up with the name for this new lodge. Following the establishment of the United Grand Lodge, several individuals who

were previously members of NGL and the Smooth Ashlar Grand Lodge left that lodge and became members of the United Grand Lodge.

NGL sent a cease-and-desist letter to Mitchell in March of 2015, indicating its belief that Mitchell and United Grand Lodge were infringing on its trademark rights by including "AF & AYM" and the corresponding phrase "Ancient Free and Accepted York Rite Masons" as a part of the title of the United Grand Lodge organization.  NGL owns the rights to two federally registered service marks relating to its organization: the first being "F.A.A.Y.M.," an initialism of Free and Accepted Yorkrite Masons, and the second being "The Most Worshipful National Grand Lodge Free and Accepted Ancient Yorkrite Masons Prince Hall Origin, National Compact U.S.A."  NGL's letter expressed to Mitchell that it believed confusion was likely if United Grand Lodge continued to use its full organizational title – United Grand Lodge GA, AF & AYM.  The United Grand Lodge did not change its title, and NGL filed suit in July of 2017.

## II.

NGL's Amended Complaint against Mitchell[1] consists of allegations of trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a), and under

---

[1] We refer to the defendants, Mitchell and United Grand Lodge, collectively as "Mitchell."

3

Georgia law, O.C.G.A. § 10-1-372 and § 10-1-393.[2]  Following discovery,

Mitchell moved for summary judgment on NGL's claims, arguing primarily that

NGL had not put forth any evidence to support the required finding of likelihood

of confusion.  Mitchell also argued that NGL had not presented evidence to

support its claim for damages or shown its ownership of any common law

trademark rights independent from NGL's two registered marks.  The District

Court found that, while the incontestability status of NGL's federally registered

marks indicates that "they are at least descriptive with secondary meaning and are

relatively strong [marks]," the extremely limited amount of other evidence in the

record "cannot plausibly support a finding of likelihood of confusion."  The Court

found that the lack of an evidentiary basis to find a likelihood of confusion was

fatal to both NGL's federal and state law claims, and it granted summary judgment

to Mitchell on that basis.

---

[2] NGL's federal claims based on 15 U.S.C. § 1125(c) and (d) were dismissed by the District Court for failure to state a claim.  NGL's claim of "service mark harassment and disparagement" (which did not specify the statutory or other legal basis for the claim) was also dismissed for failure to state a claim.

Additionally, NGL asserts that it is entitled to common law trademark protection of the phrase "Free and Accepted Yorkrite Masons," a derivation of its name not registered on the federal registry.  The District Court found that NGL had shown no common law trademark rights in any unregistered marks because it did not offer any proof of "actual prior use in commerce." NGL does not challenge this ruling on appeal, so we need not address these claims.  *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (holding that issues not raised in appellant's initial brief on appeal are deemed abandoned).

Subsequently, Mitchell moved the Court to award him attorneys' fees pursuant to federal and state trademark law, and moved to impose sanctions against NGL based on NGL's failure to appropriately adhere to deadlines throughout the discovery process. The District Court granted Mitchell's request for attorneys' fees, finding that the "exceptional case" standard of the Lanham Act was satisfied "due to the weakness of the Plaintiff's claims and the Plaintiff's litigation conduct."[3] The Court cited NGL's failure to timely respond to Mitchell's motions to dismiss, failure to timely respond to discovery requests, serving of multiple discovery requests on Mitchell shortly before the end of the discovery period, and various examples of necessitating "unnecessary motion practice and briefing."[4]

NGL appeals the District Court's grant of summary judgment to Mitchell on the merits, as well as the District Court's award of attorneys' fees to Mitchell under the Lanham Act. We address both orders in turn.

### III.

We review a grant of summary judgment de novo, "viewing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in

---

[3] Without elaboration, the District Court denied Mitchell's non-Lanham Act claims for attorneys' fees and sanctions.

[4] Even after the Court awarded attorneys' fees to Mitchell on this basis, NGL filed a motion to stay enforcement of the attorneys' fees order, which was denied. Additionally, NGL's failure to respond to Mitchell's post-judgment discovery requests caused Mitchell to file a motion to compel discovery, which was granted, and a motion to hold NGL in contempt for failing to comply with that discovery order, which is currently pending.

favor of that party." *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1141 (11th Cir. 2014).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Section 43(a) of the Lanham Act forbids a seller of any good or service from using any "word, term, name, symbol, or device" (i.e., a trademark) in connection with their product that is "likely to cause confusion" with the goods or services of another seller, including confusion as to the "origin, sponsorship, or approval" of the product. 15 U.S.C. § 1125(a)(1)(A).  In order to succeed on a claim under this Section, a plaintiff must show that the defendant's use of a similar trademark has created a likelihood of consumer confusion as to the source or sponsorship of defendant's product or service.  *Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1130–31 (11th Cir. 2018).  In determining whether confusion is likely, this Circuit typically looks to seven non-dispositive factors:

> "(1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public."

*Tana v. Dantanna's*, 611 F.3d 767, 774–75 (11th Cir. 2010).

The District Court found that "[NGL's] production [of evidence] has been sparse and largely irrelevant to the likelihood of confusion inquiry." Our review of the record confirms that this characterization is accurate. In its brief on appeal, NGL contends that it has presented at least "three or four instances" of actual confusion through the affidavits of Lodge members and Masonic officials. These affidavits, however, do not address whatsoever whether Mitchell's use of the United Grand Lodge mark caused "actual confusion in the consuming public." *Dantanna's*, 611 F.3d at 775. Actual confusion requires that a "deceived customer buy[] the infringer's product in the belief that . . . it in some way is affiliated with the owner [of the trademark or trade dress]." *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 488 (5th Cir. 1971).[5]

NGL's affidavits do not evince any belief by current or potential NGL members that Mitchell's United Grand Lodge had any affiliation with NGL. To the contrary, all of them seemed to recognize that, after Mitchell was suspended and later expelled from NGL, he "established *his own* Grand Lodge" (emphasis added). Notwithstanding their belief that Mitchell's actions were inappropriate, these affidavits demonstrate an understanding that Mitchell's Lodge is not affiliated with

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

7

NGL.[6]  Thus, these affidavits do not provide any proof of actual confusion,[7] and instead address irrelevant subjects. [8]

NGL mentions only in passing the other likelihood of confusion factors. NGL alludes to the fact that there is evidence that its mark is strong because of its presence on the federal register.  Indeed, the District Court recognized that the two federally registered marks at issue have achieved incontestable status, which gives the presumption that they are strong marks for purposes of the first factor of the analysis.  *See Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322, 329 (11th Cir. 1989) (holding that an incontestable mark is "presumed to be at least descriptive with secondary meaning, and therefore a relatively strong mark.")  But this is the sole piece of evidence in support of NGL's claims.  NGL references the

---

[6] We note that the affidavits showed that NGL members recognized that Mitchell was prohibited from carrying on Masonic activities on behalf of NGL.  For example, Cedric Lewis states that Mitchell's establishment of his own Lodge makes him a "squatter" because the NGL prohibited him from using its property for Masonic purposes.  Furthermore, the notice of Mitchell's expulsion from the NGL, which was provided to "all Brothers, Sisters, Grand Department Heads, and the National Grand Master," indicated that Mitchell was banned from "[a]ll Masonic [i]ntercourse within the jurisdiction."

[7] For example, in an affidavit prepared by Anthony Williams, a past Grand Master of an NGL subordinate lodge, he stated only that Mitchell's conduct was in "[v]iolation of National Grand policies and laws."  The other affidavits are similar in that they speak only to violations of the purported rules of Masonry rather than any sort of confusion that would be actionable under trademark law.

[8] NGL asserts that Mitchell's creation of his own Lodge caused NGL to "los[e] an undeterminable number of new members."  This may be so, but assuming the members who left NGL to join United Grand Lodge did so with the belief that Mitchell was not affiliated with NGL, this sort of competition is inoffensive to trademark law.  As already stated, NGL has not presented any evidence indicating that anyone was actually confused about Mitchell's present lack of affiliation with NGL.

"similar[ity]" of the parties' "respective services/purposes" and the "similarity of the parties' retail outlets and customers," but cites no evidence in the record to support its arguments on these factors. Similarly, NGL's references to Mitchell's intent speak only to his "inten[t] to stir up enough discontent . . . to recruit personnel and bolster his new organization," which has no bearing on whether Mitchell intended to misappropriate the goodwill associated with his new competitor's trademark. *See Dantanna's*, 611 F.3d at 775.

In sum, the sole piece of evidence that supports a finding that consumers are likely to be confused by Mitchell's use of the United Grand Lodge mark is NGL's registration of its two marks, and their subsequent attainment of incontestable status. We agree with the District Court that, given the dearth of evidence in the record, NGL has not presented a triable issue of fact on likelihood of confusion, and therefore summary judgment was properly granted in favor of Mitchell on NGL's Lanham Act and Georgia law claims.[9]

---

[9] NGL argues that the District Court erroneously extended its summary judgment ruling to NGL's claims under O.C.G.A. § 10-1-372 and O.C.G.A. § 10-1-393. NGL contends that the Lanham Act's likelihood of confusion requirement does not apply to these Sections. We reject this argument because NGL has provided no case citations supporting it, and many cases in this Circuit suggest that it is incorrect. *See Univ. of Ga. Athletic Ass'n v. Laite*, 756 F.2d 1535, 1539 n.11 (11th Cir. 1985) (noting that the standards governing deceptive and unfair trade practice claims under Georgia law are "similar, if not identical, to those under the Lanham Act."); *Energy Four, Inc. v. Dornier Med. Sys., Inc.*, 765 F. Supp. 724, 731 (N.D. Ga. 1991) ("The [Georgia] Uniform Deceptive Trade Practices Act involves the same dispositive questions as the Federal Lanham Act." (citing *Jellibeans, Inc. v. Skating Clubs of Ga., Inc.*, 716 F.2d 833, 839 (11th Cir. 1983))); *Gold Kist Inc. v. ConAgra, Inc.*, 708 F. Supp. 1291, 1303 (N.D. Ga. 1989) (noting that

IV.

We next turn to NGL's argument that the District Court's award of attorneys' fees to Mitchell under the Lanham Act was improper.  The Lanham Act provides that the court may, "in exceptional cases," award attorneys' fees to the prevailing party.  15 U.S.C. § 1117(a).  An exceptional case is one that "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554, 134 S. Ct. 1749, 1756 (2014); *see also Tobinick v. Novella*, 884 F.3d 1110, 1117–18 (11th Cir. 2018) (applying the *Octane Fitness* standard to the "exceptional case" analysis under the Lanham Act).

We review the District Court's decision to award fees to Mitchell under this standard for an abuse of discretion.  *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1335 (11th Cir. 2001).  In reference to the *Octane Fitness* standard, the District Court addressed both the "weakness of the Plaintiff's claims and the Plaintiff's litigation conduct."  The District Court noted that this case makes apparent that NGL failed to "conduct a proper prefiling investigation" of its

the Georgia Fair Business Practices Act under § 10-1-390, *et seq.*, requires a finding of likelihood of confusion).

10

trademark infringement claims, which would have informed it of the weakness of its claims.  Because the majority of NGL's evidence in this case has been wholly irrelevant to a claim of trademark infringement, we agree with the District Court.

The District Court also cited NGL's conduct during this litigation as "stand[ing] out from others."  The Court pointed to NGL's failure to timely respond to Mitchell's motions to dismiss, failure to timely respond to discovery requests, serving of multiple discovery requests on Mitchell shortly before the end of the discovery period, and various examples of necessitating "unnecessary motion practice and briefing" with its discovery tactics.  As explained in footnote 4, *supra*, even after the District Court awarded attorneys' fees to Mitchell on this basis, NGL continued filing new motions and refused to comply with court orders, which necessitated further expense by the parties and the Court, including a currently-pending motion to hold NGL in contempt.

Overall, the District Court considered ample evidence that NGL's legal claims were weak and undeveloped from the outset, and that its behavior during the discovery process was unprofessional and unreasonable.  We do not find that the District Court abused its discretion in holding that this was an exceptional case and awarding attorneys' fees to Mitchell.

11

V.

For the above reasons, we affirm the two orders of the District Court.[10]

**AFFIRMED.**

---

[10] Though it does not appear in NGL's request for relief on appeal, NGL also purportedly challenges the District Court's grant of Mitchell's request for a protective order regarding NGL's untimely discovery requests of February 21, February 27, and March 1, 2019. Given our disposition that summary judgment was properly awarded to Mitchell, and given our discussion of NGL's unprincipled use of the discovery process, *supra* Part IV, we find no indication that the Court abused its discretion when it granted Mitchell's request for relief from untimely discovery requests that violated the discovery plan set by the Court.