United States Court of Appeals,

Eleventh Circuit.

Nos. 94-8700, 95-8656 and 95-8767.

LONE STAR STEAKHOUSE & SALOON, INC., Plaintiff-Counterdefendant-Appellant,

v.

LONGHORN STEAKS, INC., Defendant-Appellee.

Lone Star Steaks, Inc., Plaintiff-Counterdefendant-Appellee,

v.

Lone Star Steakhouse & Saloon of Georgia, Inc., Lone Star Steakhouse & Saloon, Inc., Defendants-Counterclaimants-Appellants.

Lone Star Steakhouse & Saloon, Inc., Plaintiff-Counterdefendant-Appellant, Cross-Appellee,

v.

Longhorn Steaks, Inc., Defendant-Appellee, Cross-Appellant.

Lone Star Steaks, Inc., Plaintiff-Counterdefendant-Appellee, Cross-Appellant,

v.

Lone Star Steakhouse & Saloon of Georgia, Inc., Lone Star Steakhouse & Saloon, Inc., Defendants-Counterclaimants-Appellants, Cross-Appellees.

Lone Star Steakhouse & Saloon, Inc., Plaintiff-Counterdefendant-Appellee,

v.

Longhorn Steaks, Inc., Defendant-Counterclaimant-Appellant.

Lone Star Steaks, Inc., Plaintiff-Counterdefendant-Appellant,

v.

Lone Star Steakhouse & Saloon of Georgia, Inc., Lone Star Steakhouse & Saloon, Inc., Defendants-Counterclaimants-Appellees.

Sept. 25, 1997.

Appeals from the United States District Court for the Northern District of Georgia. (Nos. 1:93-CV-2936-ODE, 1:93-CV-2938-ODE), Orinda D. Evans, Judge.

Before COX and BLACK, Circuit Judges, and FAY, Senior Circuit Judge.

ON SUGGESTION OF REHEARING EN BANC.

PER CURIAM:

In its suggestion of rehearing en banc, appellants and cross-appellees, Lone Star Steakhouse & Saloon, Inc. and Lone Star Steakhouse & Saloon of Georgia, Inc. (hereinafter, collectively referred to as "LSS & S"), essentially argue that the district court and our original panel opinion, published at 106 F.3d 355 (11th Cir.1997), did not address whether appellee and cross-appellant, Lone Star Steaks,[1] and its mark LONE STAR STEAKS was likely to cause consumer confusion with LSS & S's LONE STAR CAFE mark.[2] After reconsidering LSS & S's argument, we are now convinced that the district court procedurally overlooked LSS & S's position. Likewise, it appears that we neglected to fully address the issue. Upon further review, we supplement our prior opinion and remand the case to the district court for a de novo consideration of whether or not continued use of both the LONE STAR STEAKS mark and the LONE STAR CAFE mark will likely cause consumer confusion.

Initially, the trademark dispute in this case centered around the marks LONE STAR STEAKHOUSE & SALOON and LONE STAR STEAKS. Indeed, the district court's analysis and our prior opinion focused on whether LSS & S's federally registered LONE STAR CAFE mark could be extended to offer priority and protection to LSS & S's LONE STAR STEAKHOUSE & SALOON mark. The district court rejected LSS & S's contention and consequently enjoined them from using its LONE STAR STEAKHOUSE & SALOON mark. We affirmed this portion of the district court's ruling and LSS & S's suggestion of rehearing does not challenge this decision. However, because the district court found that LSS & S was not using its LONE STAR CAFE mark

---

[1] During the course of this litigation and appeal, Longhorn Steaks, Inc., acquired Lone Star Steaks' two restaurants and converted one of the Lone Star Steaks' restaurants into a Longhorn Steaks' restaurant.

[2] From the record before us, it appears that LSS & S did not file a petition for rehearing by the panel, *see* Fed.R.App.P. 40, but instead filed a suggestion for rehearing en banc. *See* Fed.R.App.P. 35. Nonetheless, we, the prior panel, and not the en banc court, take this opportunity to correct and modify our earlier opinion.

as a service mark, it was unnecessary to consider whether Lone Star Steaks and its LONE STAR STEAKS mark was causing customer confusion with LSS & S's LONE STAR CAFE mark.

Thereafter, LSS & S petitioned the district court for permission to use its alleged superior LONE STAR CAFE mark. The district court granted LSS & S's petition and LSS & S eventually began using the LONE STAR CAFE mark in Georgia instead of the LONE STAR STEAKHOUSE & SALOON mark. Lone Star Steaks then filed a motion for summary judgment seeking a permanent injunction against LSS & S. At this point, both the district court and our subsequent panel opinion failed to realize the legal significance of LSS & S's use of the LONE STAR CAFE mark as a service mark. Without resolving whether the LONE STAR STEAKS mark infringed upon LSS & S's recent use of its LONE STAR CAFE mark, the district court granted Lone Star Steaks a permanent injunction.

By complying with the district court's preliminary injunction order and the clarification order authorizing the use of the LONE STAR CAFE mark, the facts relevant at the preliminary injunction stage had changed by the time of Lone Star Steaks' motion for summary judgment. Furthermore, while the district court resolved the infringement claims present during the preliminary injunction (between LONE STAR STEAKHOUSE & SALOON and LONE STAR STEAKS), it failed to determine the related claim of infringement between LONE STAR CAFE and LONE STAR STEAKS. This omission was erroneous. This Court has previously found that the resolution of one trademark infringement claim without regard for related claims of infringement is improper. *SunAmerica Corp. v. Sun Life Assur. Co.,* 77 F.3d 1325, 1342 (11th Cir.1996). Pursuant to *SunAmerica,* when Lone Star Steaks filed its motion for summary judgment and since by this time LSS & S was using its LONE STAR CAFE mark, the district court should have considered the infringement issue concerning LONE STAR CAFE and LONE STAR STEAKS. To the extent our prior opinion overlooked this issue, we modify our opinion to reflect the analysis of the issues as required in *SunAmerica* and now turn our attention to whether the LONE STAR STEAKS mark might be infringing upon the LONE STAR CAFE mark.

3

To prevail on a trademark or service mark infringement claim, a plaintiff must show (1) that its mark has priority and (2) that the defendant's mark is likely to cause consumer confusion. *Dieter v. B & H Industries of Southwest Florida, Inc.,* 880 F.2d 322, 326 (11th Cir.1989) (citing 15 U.S.C. § 1114(1)(a)). In our case, LSS & S may satisfy the priority requirement needed to succeed in an infringement claim. Under the facts of our prior opinion, the 1981 federally registered LONE STAR CAFE mark is prior and superior to the LONE STAR STEAKS mark, which was first used in January of 1984. Indeed, the district court acknowledged that Lone Star Steaks "probably cannot establish that it is substantially likely to succeed on the merits of an argument that its LONE STAR STEAKS mark has priority over [LSS & S's] LONE STAR CAFE mark." R4-48-4. However, this is contingent upon the resolution of the attacks concerning the acquisition of the LONE STAR CAFE mark and possible abandonment raised by Lone Star Steaks.

The second requirement needed to prevail in an infringement claim is whether the use of the LONE STAR STEAKS mark is likely to cause consumer confusion. In other words, LSS & S must also prove that there is a likelihood that the public will find the LONE STAR STEAKS mark confusingly similar to LSS & S's LONE STAR CAFE mark. In determining the likelihood of confusion between the two marks, we require a district court to analyze the following seven factors: (1) type of mark, (2) similarity of mark, (3) similarity of the products the marks represent, (4) similarity of the parties' retail outlets and customers, (5) similarity of advertising media used, (6) defendant's intent and (7) actual confusion. *Dieter v. B & H Industries of Southwest Florida, Inc.,* 880 F.2d 322, 326 (11th Cir.1989); *Freedom Sav. and Loan Ass'n v. Way,* 757 F.2d 1176, 1182 (11th Cir.), *cert. denied,* 474 U.S. 845, 106 S.Ct. 134, 88 L.Ed.2d 110 (1985). Of these seven factors, we consider the type of mark and the evidence of actual confusion to be the two most important factors. *Dieter,* 880 F.2d at 326. In reviewing the evidence, there are no set rules as to how much evidence of confusion is needed; rather, a district court "must take into consideration the circumstances surrounding each particular case." *Id.* at 326 n. 3 (citing *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.,* 716 F.2d 833, 844 (11th Cir.1983)).

4

In the case before us, the district court did not make an explicit ruling regarding the likelihood of confusion between the two marks. The district court merely stated that it was "not convinced that the LONE STAR STEAKS mark and the LONE STAR CAFE mark were confusingly similar." R4-48-4. Although the district court was uncertain whether the marks were confusingly similar, there is evidence in the record to suggest that the two marks did cause some actual consumer confusion, *see* R5-68-2-4 (affidavit of the general manager of Lone Star Cafe restaurant noting two specific instances of customer confusion), both restaurants utilize the same words "LONE STAR" in their restaurants' names, and both serve a similar type of food, Texas cuisine.

Because the law of this circuit requires a district court to fully consider the seven factors listed above in determining the likelihood of confusion between two marks and because from the record before us it appears that there are genuine issues concerning the acquisition of and possible abandonment of the LONE STAR CAFE mark, we vacate our previous affirmance of the district court's order granting Lone Star Steaks a permanent injunction and remand the case to the district court to determine whether LSS & S acquired and maintained the validity of the LONE STAR CAFE mark, as well as whether or not the LONE STAR STEAKS and LONE STAR CAFE marks are confusingly similar. In addition, because this modified ruling may change the award of profits and attorneys' fees recoverable under the Lanham Act, the district court may revisit these issues if necessary.

Our prior opinion is supplemented and modified and this matter is remanded for proceedings consistent with this discussion.

MODIFIED AND REMANDED.