**PORTIONPAC CHEMICAL CORPORATION,** ·
Plaintiff,

v.

**SANITECH SYSTEMS, INC.,** Gregory A. Guice, and William Burnside, Defendants.

**No. 8:01–CV1297T17MAP.**

United States District Court, M.D. Florida, Tampa Division.

July 25, 2002.

---

See also 210 F.Supp.2d 1302.

Partial Summary Judgment and Memorandum of Law in support thereof (Dkt.Nos.106–107); Defendants' Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 36); Sanitech's Motion for Summary Judgment and Memorandum of Law in support thereof (Dkt.Nos.108–109); Plaintiff's *Substituted* Opposition to Defendants' Motion for Final Summary Judgment (Dkt. No. 139); Plaintiff's *Substituted* Statement of Facts in Opposition to Defendants' Motion for Final Summary Judgment and Memorandum in support thereof (Dkt. No. 140); Deposition of Syble Thornhill Jones (Dkt. No. 111); Deposition of Charles H. Ainsworth (Dkt.Nos.112–15); Deposition of Marvin Klein (Dkt. No. 115); Deposition of Beverly Girard (Dkt. No. 116); Deposition of Patricia Strickland (Dkt. No. 117); Deposition of Kathleen A. McGinn (Dkt. No. 118); Deposition of Joan Kidd (Dkt. No. 119); Deposition of Leeanna Rae Hollenbeck (Dkt. No. 120); Affidavit of John Atkins (Dkt. No. 122); Affidavit of William Burnside (Dkt. No. 124); and Affidavit of Gregory Guice (Dkt. No. 126).

### Factual Background

Lonnie L. Simpson, Piper Rudnick LLP, Tampa, FL, Barry M. Heller, J.T. Westermeier, John J. Dwyer, Piper Marbury Rudnick & Wolfe, Washington, DC, for plaintiff.

Jeffrey D. Keiner, Mark Nelson Miller, Frank A. Hamner, Nicolette M. Corso, Gray, Harris & Robinson, P.A., Orlando, FL, for defendants.

### *ORDER*

KOVACHEVICH, Chief Judge.

THIS CAUSE comes before the Court for consideration of Plaintiff's Motion for

Plaintiff, PortionPac Chemical Corporation (Plaintiff), created the SFSPac Program, a food service sanitation package of products and methodologies that Plaintiff claims is unique and distinctive. The SFSPac Program is directed at school districts and includes, among other things, color-coordinated and portion-controlled cleaning products; training programs; computer-generated reports; and inventory control features.

In 1993, Plaintiff and Defendant, Sanitech Systems, Incorporated (Defendant Sanitech),[1] entered into a distributorship

---

1. The Court will refer to Defendant Sanitech, Defendant Gregory Guice (Defendant Guice), and Defendant William Burnside (Defendant Burnside) collectively as "Defendants" throughout the remainder of this Order.

agreement in which Defendants agreed to distribute Plaintiff's line of food service sanitation products to school districts in Florida. To distribute the products to school districts, Defendants were required to submit the products through the competitive-bidding process. Each school specified the products that were required to be included in each bid.

During the term of the agreement between the parties, Defendants were distributing other products to the school districts. In 2000, Defendants terminated the distributorship agreement with Plaintiff in accordance with the terms of the agreement. Subsequently, Defendants began offering a food service sanitation package similar to the SFSPac Program that Plaintiff offered.

### Procedural Background

On July 9, 2001, Plaintiff brought suit against Defendants in this Court for copyright and trade dress infringement, among other claims. Additionally, Plaintiff moved for a preliminary injunction. Defendants then filed a counterclaim for tortious interference with business relationships and filed their own motion for preliminary injunction. Prior to the entry of this Order, the Court dismissed Defendants' tortious interference claim and denied their motion for preliminary injunction. Additionally, Plaintiff voluntarily dismissed Counts III, V, and VII of its complaint, and this Court dismissed Count XXI and the claims under the Florida Anti–Dilution statute contained in Counts IX and XX with prejudice.

Finally, the Court denied Plaintiff's Motion for Preliminary Injunction and adopted the Report and Recommendation of Magistrate Judge Mark A. Pizzo in full. Now, Plaintiff moves for summary judgment on Counts II, IV, VI, VIII, XII, XVIII, and XXI contained in its com-

plaint.[2] Additionally, Defendants move for summary judgment on all remaining Counts in Plaintiff's complaint.

### Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). That burden can be discharged if the moving party can show the Court that there is "an absence of evidence to support the non-moving party's case." *Id.* at 323, 325, 106 S.Ct. 2548. When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324, 106 S.Ct. 2548.

Issues of fact are " 'genuine' only if a reasonable jury considering the evidence presented could find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those that will affect the outcome of the trial under governing law. *Id.* at 248, 106 S.Ct. 2505. In determining whether a material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v.*

---

**2.** Because this Court previously dismissed Plaintiff's twenty-first count with prejudice, the motion for summary judgment as to that count is denied as moot.

*First Natl. Bank of Mt. Pleasant,* 595 F.2d 994, 996–997 (5th Cir.1979). The court may not weigh the credibility of the parties on summary judgment. *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1531 (11th Cir.1987). If the determination of the case rests on which competing version of the facts or events is true, the case should be submitted to the trier of fact. *Id.*

In a copyright infringement action, summary judgment is proper if the court determines that the similarity between the two works concerns only noncopyrightable elements of the plaintiff's work or because no reasonable jury, properly instructed could find that the two works are substantially similar. *Herzog v. Castle Rock Entertainment,* 1998 U.S. Dist. LEXIS 22503, *13 (S.D.Fla.1998) (citing *Beal v. Paramount Pictures Corp.,* 20 F.3d 454 (11th Cir.1994)).

### Discussion

### I. Copyright Infringement Claims

■ The Copyright Act of 1976 gives the holder of a registered copyright a right to sue. 17 U.S.C. § 501(b). To prevail on a claim of copyright infringement, the plaintiff must prove ownership of a valid copyright, as well as copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). If the plaintiff does not have direct proof of copying, he or she may show copying by demonstrating that the defendant had access to the copyrighted work and that the works are "substantially similar." *Herzog v. Castle Rock Entertainment,* 193 F.3d 1241, 1248 (11th Cir. 1999) (citing *Benson v. Coca–Cola Co.,* 795 F.2d 973, 974 (11th Cir.1986)). If the plaintiff cannot show access, he or she may still prevail by demonstrating that the works are "strikingly similar." *Id.* (citing *Ferguson v. Natl. Broadcasting Co.,* 584 F.2d 111, 113 (5th Cir.1978)).

### A. Ownership of a Valid Copyright

■ To qualify for copyright protection, the work must be: "1) copyrightable subject matter that is 2) original to the author and 3) fixed in a tangible medium of expression." *Infodek, Inc. v. Meredith–Webb Printing Co., Inc.,* 830 F.Supp. 614, 621 (N.D.Ga.1993) (citing *Feist,* 499 U.S. at 341, 111 S.Ct. 1282). The Register of Copyrights makes the initial determination of copyrightability before the issuance of a certificate of registration. 17 U.S.C. § 410(a). If registration is made within five years of the first publication of the work, a certificate of registration constitutes "prima facie evidence of the validity of the copyright and of the facts stated in the certificate" in any judicial proceeding. *Id.* § 410(c).

■ While the burden of persuasion as to the validity of the copyright rests with the plaintiff in an infringement action, once he or she produces a copyright certificate, a *prima facie* case of validity of the copyright is established, and the burden of production shifts to the defendant to introduce evidence of its invalidity. 17 U.S.C. § 410(c). "At this juncture, it is incumbent upon the putative infringer to establish that the work in which the copyright is claimed in unprotectable (for lack of originality), or, more specifically, to prove that the portion of the copyrighted work actually taken is unworthy of copyright protection." *Bateman v. Mnemonics, Inc.,* 79 F.3d 1532 (11th Cir.1996).

### *Originality*

■ The Copyright Act requires that a work must be an original work of authorship to receive copyright protection. 17 U.S.C. § 102(a). Thus, a plaintiff's copyright is valid only to the extent that it protects against the unauthorized use of the original elements of expression because copyright protection cannot be ob-

tained for nonoriginal elements of a work of authorship. *Infodek,* 830 F.Supp. at 622. To be "original," the work does not need to be novel; rather, "originality" is a constitutional requirement that means that the work "was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Id.* at 622. As such, works lacking a minimal degree of creativity are not proper subjects for copyright protection.[3]

### Merger Doctrine

■ The merger doctrine denies copyright protection when an idea and its expression are so closely connected that there is only one way to express the idea. *Digital Communications Assoc., Inc. v. Softklone Dist. Corp.,* 659 F.Supp. 449, 457–458 (N.D.Ga.1987)). Under the merger doctrine, an "expression is not protected in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself." *BellSouth Advertising & Publg. Corp. v. Donnelley Info. Publg., Inc.,* 999 F.2d 1436, 1442 (11th Cir.1993) (quoting *Kregos v. Assoc. Press,* 937 F.2d 700, 705 (2d Cir.1991)). To determine whether an idea and expression merge, the court must determine "1) the purpose or function of the article, and 2) whether there are various means available to achieve the article's desired purpose or function." *Id.*

### B. Copying

■ If the court determines that the plaintiff is the owner of a valid copyright, it must next decide whether the defendant copied the plaintiff's copyrighted work. Because it is extremely difficult to prove copying directly, the plaintiff can show copying circumstantially by demonstrating

that the defendant had access to the copyrighted material and that there is substantial similarity between the two works. *Herzog,* 193 F.3d at 1249. Once the plaintiff has made this showing, the burden shifts to the defendant to prove that his or her work was an independent creation and that it was not a copy of the plaintiff's copyrighted work. *Id.*

### 1. Access

■ Like copying, it is difficult to show direct proof of access to a copyrighted work. However, in this Circuit, access is regarded as "a reasonable opportunity to view." *Id.* In the case at hand, there is no dispute that Defendants had access to Plaintiff's SFSPac Program. Therefore, the Court must determine whether Plaintiff's SFSPac Program and Defendant's Clean Genie Program are substantially similar.

### 2. Substantial Similarity

■ To show "substantial similarity," the plaintiff must establish that "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Id.* at 1248 (quoting *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,* 684 F.2d 821, 829 (11th Cir.1982)). Under copyright law, ideas are not copyrightable; therefore, the substantial similarity required for infringement must be substantial similarity of the expression, not substantial similarity of the idea. *Id.* To establish substantial similarity, a plaintiff must satisfy a two-pronged test: an extrinsic, or objective, test and an intrinsic, or subjective, test. *Id.* at 1257.

Under the extrinsic test, a court will inquire into whether the works are substantially similar in protected expression.

---

**3.** Examples of works that lack a minimal degree of creativity include works consisting of

"familiar symbols or designs." 37 C.F.R. § 202.02(a).

*Id.* In making this inquiry, the court will determine whether a plaintiff seeks to protect only noncopyrightable elements. *Id.* Noncopyrightable elements include material traceable to common sources, the public domain, or custom, as well as ideas, facts, cliches, or metaphors. *Id.* If the plaintiff seeks to protect only noncopyrightable elements, the court will grant summary judgment for the defendant. *Id.* at 1249.

Under the intrinsic test, the court will determine whether a reasonable jury would find that the works are substantially similar. *Id.* "A court may grant summary judgment for the defendant as a matter of law if the similarity between the two works concerns only noncopyrightable elements of the plaintiff's works *or* if no reasonable jury would find that the two works are substantially similar." *Id.*

### Count I—SFSPAC Reference Manual (Reference Manual)

Plaintiff claims that Defendants infringed on its copyright for its Reference Manual because Plaintiff held a valid copyright and Defendants published, copied, and made unauthorized derivative works based on the Reference Manual. Defendants claim that the Reference Manual was not published until July 2000, after Defendants discontinued their distributorship agreement with Plaintiff, and that Plaintiff's Reference Manual and Defendants' Cleaning Genie Procedures Manual (CG Procedures Manual) are not substantially similar; therefore, they are entitled to summary judgment. Conversely, Plaintiff argues that the 2000 copyright for the Reference Manual incorporates the original and subsequent versions of the manual and, therefore, is protected. Additionally, Plaintiff points out that each page of the Cleaning Procedures contained in the Reference Manual has a copyright notice with a 1999 publication date. As such, Plaintiff argues that Defendants' misappropriation of any of these pages may be enough to constitute infringement of the entire guide.

It is well-established that copyright protection extends only to the expression of an idea—not the idea itself. *E.g. Mazer v. Stein*, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954). Although Defendants argue that Plaintiff's reference manual is not copyrightable because it contains common industry instructions and forms, the Court finds that the manual is copyrightable because it is an expression of the idea of Plaintiff's SFSPac Program. Moreover, the Court does not disagree that the manual contains materials that are not copyrightable; however, "the compiler's choice as to selection, coordination, or arrangement are the only parts of the compilation that are ... entitled to copyright protection." *Warren Publg. v. Microdos Data Corp.*, 115 F.3d 1509, 1515 (11th Cir.1997) ("[W]hat must be shown is substantial similarity between those elements ... that provide copyrightability to the allegedly infringed compilation."). Because Plaintiff chose the arrangement and selection of what was to be included in the reference manual, the Court finds that the manual is entitled to copyright protection. Therefore, the Court finds that the SFSPac Reference Manual is entitled to copyright protection.

Additionally, the Court finds that a valid copyright existed for the SFSPac Reference Manual. Many of the pages had a 1999 copyright date; thereby, giving Defendants notice of an existing copyright for the materials. Under the Copyright Act of 1978, the author must register within five years of publication and make a "reasonable effort" to add notice to all of the distributed copies. *Original Appalachian Artworks, Inc.*, 684 F.2d at 826. However, "publication of copies ... with defective notice does not necessarily impair an author's copyright protection." *Id.* at 825.

Therefore, because Plaintiff registered its copyright within five years of the publication date of its Reference Manual and attempted to provide reasonable notice on the copies of the work, the Court finds that there is *prima facie* evidence of the validity of the Reference Manual's copyright. Furthermore, Defendants have not brought forth sufficient evidence to rebut the presumption that Plaintiff has a valid copyright in its SFSPac Reference Manual.

■ Although the Court finds that the manual is copyrightable and that Plaintiff is the owner of a valid copyright in the manual, it also finds that the SFSPac Reference Manual and the Cleanie Genie Cleaning Procedures Manual are not substantially similar. Despite the fact that the manuals are similar in that they both contain safety instructions, required material safety data sheets, product descriptions, forms, and other instruction sheets, all of the materials contained in the manuals have diverse information and are organized differently. Thus, Defendants' manual has not captured the "total concept and feel" of Plaintiff's manual. *See Atari, Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607, 614 (7th Cir.1982) ("[I]f the only similarity between plaintiff's and defendant's works is that of the abstract idea, there is an absence of substantial similarity and hence no infringement results."). Because no reasonable jury could find that the two works are substantially similar, the Court must grant summary judgment for Defendants.

### Count II—SFSPAC Washing Instructions Chart (Washing Chart)

Plaintiff moves for summary judgment on Count II, alleging that Defendants infringed on its copyright for its Washing Chart by copying the expressive elements of the chart. Specifically, Plaintiff argues that the cartoon figures used on Defendants' chart is substantially similar to that used on Plaintiff's chart. Defendants also move for summary judgment, claiming that the similarities between the two charts are common in the industry and not copyrightable.

Plaintiff's Washing Instructions Chart consists of five steps—"scrape," "wash," "rinse," "sanitize," and "let stand." Accompanying these instructions is a cartoon pot who appears to be scraping, washing, and rinsing itself. Similarly, Defendants' "Wash, Rinse, & Sanitize" Chart also contains the same five steps as Plaintiff's chart with the exception of the fifth step which is dubbed "air dry" instead of "let stand." Defendants' chart also uses a cartoon pot to detail its instructions.

■ As to the instructions themselves, the Court finds that these are not protectable elements of Plaintiff's washing chart. The Court is at a loss in trying to invent any other instructions, words, or phrases to instruct an observer in washing a pot, or a pan, or any dish. In fact, the Defendant's substitution of "air dry" for "let stand" is one of the only variations that the Court finds possible for a set of instructions detailing the activity of washing dishes.

■ As to the cartoon pot illustrated on the Chart, the Court finds that this is a protectable expression. It is original with minimal creativity, and it is not the only way to express Plaintiff's idea of washing a dish. Defendants could have used a different item to instruct on cleaning items in a kitchen or they could have used a similar pan without a face on it. However, although the Court finds that the pan illustrations are similar, it does not find that a reasonable jury would find that the two works are substantially similar. Therefore, the Court finds that whether Plaintiff's Washing Chart or Defendants' Wash,

Rinse, Sanitize Chart is substantially similar is a question of fact that must be left for the jury. As such, Plaintiff's Partial Motion for Summary Judgment as to this Count must be denied and Defendants' Motion for Summary Judgment as to this Count must be denied.

### Count IV—SFSPac Mixing and Use Chart

■ Plaintiff argues that Defendants infringed on its copyright for its Mixing and Use Chart because Defendants used identical types of expression to convey the same message in their Cleaning Genie Product Uses Chart (CG Product Uses Chart). Defendants assert that its CG Product Uses Chart distinctly differs from Plaintiff's Mixing and Use Chart; therefore, it does not infringe on Plaintiff's copyright. Specifically, Defendants argue that the CG Product Uses Chart employs universal symbols that are different than the symbols that Plaintiff uses in its Mixing and Use Chart.

Here, the differences between Plaintiff's Use Chart and Defendants' Product Uses Chart are numerous. Plaintiff's chart details the use of each of its products in both written instructions and by illustration; whereas, Defendants' chart simply lists the product and gives illustrations of uses of each product. Although the illustrations, or symbols, that both Plaintiff and Defendants used are similar, they are not so substantially similar that "an average lay observer would recognize the alleged copy as having been appropriated from the work." In fact, the Court finds that the symbols used are not entitled to copyright protection. Rather, the expressions illustrated in these charts—a person mopping a floor, a person washing a floor, a stove, and utensils, to name a few—are capable of being expressed only in one, or a few ways, such that protecting the expression of these ideas would be effectively to accord protection to the idea itself. There-

fore, as a matter of law, the Court must deny Plaintiff's Partial Motion for Summary Judgment as to this Count and grant Summary Judgment in favor of Defendants as to this Count.

### Count VI—Proprietary Data Collection and Reporting Software

■ In Count VI, Plaintiff alleges a cause of action against Defendants for modifying, adapting, and creating derivative works based on Plaintiff's Software. Plaintiff argues that it is entitled to summary judgment because Defendants continued to use the software after the agreement between Plaintiff and Defendants was terminated. Conversely, Defendants argue that Plaintiff filed its copyright application in February 2002; therefore, Plaintiff did not have a valid copyright and cannot maintain an infringement action against Defendants. Moreover, Defendants argue that they purchased the software in question from a third party vendor. Finally, Defendant asserts that Plaintiff failed to provide them the software or the application for copyright registration that it filed with the Copyright Office, and, as such, Defendants request that this Court deny Plaintiff's motions for summary judgment as to this Count and impose rule 11 sanctions.

Because there is a dispute of material fact as to who actually owned the software that Defendant used, the Court finds that the Court must deny both Plaintiff's and Defendants' Motion for Summary Judgment as to this Count.

### Count VIII—Kitchen Appearance Checklist (Kitchen Checklist)

Plaintiff moves for summary judgment on Count VIII, alleging that Defendants infringed on its copyright for its "Clean Kitchen Evaluation" because Defendants' Kitchen Checklist is an unauthorized derivative work based on Plaintiff's Kitchen

Appearance Checklist. In response, Defendants argue that the evaluation sheet falls into the "blank form" exception and is not copyrightable.

■ It is well-established that blank forms that do not convey information or contain original pictorial expressions are not copyrightable. The blank form doctrine arises from an 1879 case where the Supreme Court of the United States held that blank forms were not copyrightable. *Baker v. Selden*, 101 U.S. 99, 107, 11 Otto 99, 25 L.Ed. 841 (1879). Under this doctrine, a blank form which is designed merely for recording information generally is not copyrightable. *Kregos v. Assoc. Press*, 937 F.2d at 705.

■ Here, both Plaintiff's and Defendants' Kitchen Appearance Checklists, are exactly that—checklists that score the appearance of certain areas and things in a kitchen. They do not convey any information, nor are they original or creative. As such, the Court find that the checklists are not protectable expressions under the Copyright Act. Therefore, the Court denies Plaintiff's Motion for Partial Summary Judgment as to this Count and grants Defendants' Motion for Summary Judgment as to this Count.

## II. Trade Mark and Trade Dress Claims

Defendants move for summary judgment on Counts IX and XX, arguing that Plaintiff has not produced evidence that its alleged trade dress is inherently distinctive or that it has acquired secondary meaning; that there is no likelihood of confusion; that Plaintiff's alleged trade dress is legally functional; and that dilution claims are only appropriate where the alleged dilution occurs in dissimilar goods.

### A. Trade Dress Infringement

■ Section 43(a) of the Lanham Act creates a federal cause of action for trade dress infringement. Trade dress protection embraces the "total image of a product including such factors as the size, shape, and color of the product's packaging and appearance." *Al–Site Corp. v. VSI Intl.*, 174 F.3d 1308, 1326 (Fed.Cir.1999) (applying the law of the Eleventh Circuit Court of Appeals). To prove trade dress infringement, the plaintiff must show: "1) the inherent distinctiveness or secondary meaning of its trade dress, 2) the essential nonfunctionality of its trade dress, and 3) the likelihood of consumer confusion as to origin, sponsorship, or approval due to similarity between its and the defendant's trade dress." *Id.* Because this is a conjunctive test, the defendant can secure a summary judgment by demonstrating that the plaintiff cannot show any element of trade dress infringement. *Id.*

### Inherent Distinctiveness/Secondary Meaning

■ In this Circuit, "distinctiveness" is based on whether trade dress "[is] a 'common' basic shape or design, whether it [is] unique or unusual in a particular field, [and] whether it [is] a mere refinement of a commonly adopted and well-known form or ornamentation for a particular class of good viewed by the public as a dress or ornamentation for the goods." *University of Fla. v. KPB, Inc.*, 89 F.3d 773, 776–777 (11th Cir.1996). Trade dress can also be distinctive by showing a secondary meaning, or a "connection in the consumer's mind between the mark and the product's producer, whether the producer is known or unknown." *Id.* To show secondary meaning, the plaintiff may come forward with customer surveys, evidence of lengthy and uniform displays of the dress, evidence of consumer's association of the trade dress with the plaintiff, or evidence of plaintiff's efforts to establish on the minds of the consumers a connection between the

trade dress and its product. *Al–Site*, 174 F.3d at 1326.

Here, Plaintiff has brought forth sufficient evidence to show that the SFSPac has acquired secondary meaning. Not only has it brought forth evidence showing that many schools require "SFSPac products or their equivalent" in their school bids, but it also has shown that it has gone to great efforts to establish a connection between it and its trade dress in the minds of its consumers. For the purposes of this Order, the Court finds that Plaintiff's trade dress has established secondary meaning and is, therefore, distinctive.

### Functionality

Trade dress must also be primarily nonfunctional. A trade dress is functional "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850 n. 10, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982). "[A] design is legally functional, and thus unprotectable, if it is one of a limited number of equally efficient options available to competitors and free competition would be unduly hindered by according the [trade dress] protection." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992).

 In the case at hand, Plaintiff claims that its trade dress is "the overall combination of elements of the SFSPac Program that make up its 'total image.'" This overall combination of elements consists of different types of cleaning products, color-coded bottles and instructions for each type of cleaning product, checklists, cleaning charts, and various other charts and guides to aid in the food service sanitation business. However, the Court finds that Plaintiff's trade dress is func-

tional and, therefore, not protectable. Allowing Plaintiff to protect its trade dress would hamper the suppliers of sanitation supplies to the food service business because there are only a certain number of ways to put together a package of cleaning products for distribution. Packaging products in a fashion, such as Plaintiff has, allows suppliers to provide consumers with all the products and instructions that they will need to effectively clean their food service business. If the Court allowed Plaintiff to protect its SFSPac Program, it would, in effect, be allowing Plaintiff to hold a monopoly over the food service sanitation business. Therefore, this Court finds that Plaintiff's trade dress is not protectable.

Because Plaintiff cannot show that its trade dress is nonfunctional, it has failed to prove one of the elements for the cause of action and therefore, the Court must grant summary judgment in favor of Defendants.

### B. Trade Dress/Mark Dilution [4]

 Under the Federal Trademark Dilution Act of 1995 (FTDA), which amended Section 43 of the Lanham Act,

> [t]he owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection.

15 U.S.C. § 1125(c). To prove a dilution claim, a plaintiff must provide sufficient evidence that "(1) the mark is famous; 2)

---

**4.** Plaintiff's originally filed suit under both the Federal Trademark Dilution Act and Florida's Antidilution Act; however, this Court dis-missed Plaintiff's claims under Florida's statute with prejudice.

the alleged infringer adopted the mark after the mark became famous; 3) the infringer diluted the mark; and 4) the defendant's use is commercial and in commerce." *Syndicate Sales, Inc. v, Hampshire Paper Corp.*, 192 F.3d 633, 639 (7th Cir.1999) (citing *Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. Of Travel Development,* 170 F.3d 449, 452 (4th Cir.1999)).

The FTDA defines dilution as "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties or (2) likelihood of confusion, mistake, or deception." 15 U.S.C. § 1127. The FTDA further provides a nonexclusive list of factors that a court may consider to determine whether the plaintiff's mark is famous or distinctive:

a) the degree of inherent or acquired distinctiveness of the mark; b) the duration and extent of the use of the mark in connection with the goods or services with which the mark is used; c) the duration and extent of advertising and publicity of the mark; d) the geographical extent of the trading area in which the mark is used; e) the channels of trade for the good or services with which the mark is used; f) the degree of recognition of the mark in the trading areas and the channels of trade of the mark's owner and the person against whom the injunction is sought; g) the nature and extent of the use of the same or similar marks by third parties; and h) whether the mark was registered.

15 U.S.C. § 1125(c)(1).

Taking the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has established that its mark is "famous" for the purposes of its dilution claim. Moreover, the evidence shows that Defendants allegedly began using Plaintiff's mark after it became "famous." However, because the Court finds that Plaintiff's trade dress is functional, it is not protectable and summary judgment must be granted in favor of Defendants.

### III. Misrepresentation of Origin and Affiliation Endorsement or Sponsorship

In Counts X and XI, Plaintiff asserts a cause of action against Defendants for misrepresentation of origin and misrepresentation of affiliation endorsement or sponsorship. Defendants argue that they have not made any false designations of origin or false representation of affiliation; therefore, they are entitled to judgment as a matter of law.

The Lanham Act is designed to protect against consumer confusion regarding the source of a product. *Wal–Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000). As such, courts interpret Section 1125(a) as prohibiting misrepresentations as to the source of a product primarily in two kinds of activities: false advertising and "palming off" or "passing off," where the defendant sells its products under the plaintiff's name. *Montgomery v. Noga*, 168 F.3d 1282, 1299 n. 26 (11th Cir.1999). Section 1125(a) also prohibits a practice called "reverse palming off," where the defendant sells the plaintiff's product under the defendant's name. *Id.*

 To establish a claim for reverse palming off, the plaintiff must show that: "1) the item at issue originated with the plaintiff; 2) the defendant falsely designated the origin of the work; 3) the false designation was likely to cause consumer confusion; and 4) the plaintiff was harmed by the defendant's false designation." *Del Monte Fresh Produce Co. v. Dole Monte Fresh Fruit Co.*, 136 F.Supp.2d 1271, 1284 (S.D.Fla.2001). From the evidence in the

record, there are factual disputes as to who actually created some of the items contained within the SFSPac. Moreover, Defendants have failed to produce sufficient evidence that they did not falsely designate the origin of their Clean Genie Products. As such, the Court must deny Defendants' Motion for Summary Judgment.

## IV. Breach of Contract

 Plaintiff moves for summary judgment on its breach of contract claim, arguing that Defendants had a continuing obligation to protect and safeguard the SFSPac Program. Defendants also move for summary judgment on this Count, arguing that they lawfully terminated their agreement with Plaintiff. However, because there are factual disputes as to whether Defendants infringed on Plaintiff's copyrights or trademarks, this Court cannot determine, as a matter of law, that Defendants failed to "protect and safeguard" the SFSPac Program. In fact, the only undisputed evidence before this Court provides that Defendants lawfully terminated their agreement with Plaintiff. Therefore, the Court must deny both Plaintiff's and Defendants' Motions for Summary Judgment as to the breach of contract claim.

## V. Tortious Conversion and Unjust Enrichment Claims

 In Florida, an action for tortious conversion will lie for a "wrongful taking of intangible interests in a business venture." *In re Estate of Corbin*, 391 So.2d 731, 732–733 (Fla.App.3d 1980). Because the Court is unable to determine, as a matter of law, whether Defendants infringed on Plaintiff's copyrights for its SFSPac Program, the Court must also deny Defendants' Motion for Summary Judgment as to its tortious conversion and unjust enrichment claims.

## VI. Misappropriation of Trade Secrets and Confidential Information

 Plaintiff alleges a cause of action against Defendants for misappropriation of trade secrets and confidential information in Count XV. Defendants argue that Plaintiff has not proven or alleged that Defendants acquired Plaintiff's trade secrets by improper means; that Plaintiff never required Defendants to sign a confidentiality agreement; and that Plaintiff has done nothing to protect its trademark and confidential information pursuant to Section 688.002 of the Florida Statutes; therefore, Defendants are entitled to summary judgment.

Trade secrets are defined under Florida law as information "1) which is used in one's business 2) which gives him an opportunity to obtain an advantage over competitors who do not know or use it 3) which is secret, 4) which is maintained in secrecy by the owner 5) which is of value to a competitor and which was acquired at some expense to or effort by its owner." *SmokEnders, Inc. v. Smoke No More, Inc.*, 184 U.S.P.Q. 309, 317, 1974 WL 20234, 1974 U.S. Dist. LEXIS 6183, * 27 (S.D.Fla. 1974). Additionally, while the trade secret need not be novel, it must be more than an "ordinary mechanical commodity." *Id.*

Here, Plaintiff has failed to allege or provide evidence as to what trade secret that Defendants allegedly misappropriated. In fact, Plaintiff's have alleged none of the elements necessary for a claim for misappropriation of trade secrets under Florida law. *See Imax Corp. v. Cinema Technologies, Inc.*, 152 F.3d 1161 (9th Cir. 1998) ("A plaintiff seeking relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of showing that they exist."). Therefore, the Court finds that Plaintiff has failed to state a claim of relief and has brought forth no evidence establishing that a trade secret

exists for which Defendants allegedly misappropriated; therefore, the Court grants Defendants' Motion for Summary Judgment.

## VII. Florida Deceptive and Unfair Trade Practices Act and Unfair Competition

█ Defendants move for summary judgment on Counts XVI and XVII, claiming that Plaintiff has not produced evidence of customer confusion or evidence that Defendants deceived customers or potential customers as to the ownership of their Cleaning Genie products.

The Florida Deceptive and Unfair Trade Practices Act provides a private right of action for unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in conducting any trade or commerce. Fla. Stat. § 501.204. Under the statute, only a "consumer" may recover actual damages for unfair trade practices. *Id.* § 501.211(2). Therefore, an action can be maintained under the statute only if the alleged unfair and deceptive act or practice complained of involves a consumer transaction. Because Plaintiff is not a consumer involved in a consumer transaction with Defendants, it has no standing to bring claims under the Florida Deceptive and Unfair Practice Act, and summary judgment must be granted for Defendants.

## VIII. Common Law Trade Mark Infringement

Defendants move for summary judgment on Count IX on the grounds that Plaintiff cannot protect the color coding of its products and that Plaintiff's color coding is not inherently distinctive, nor has it acquired secondary meaning.

Under the common law, trademark rights "give the owner protection against the use of its mark on any product or service which would reasonably be thought by the buying public to come from the same source or thought to be affiliated with, connected with, or sponsored by, the trademark owner." *Tally–Ho, Inc. v. Coast Community College Dist.,* 889 F.2d 1018, 1021 (11th Cir.1990).

█ To prevail on a common law trademark infringement claim,[5] where the mark has not been registered, a plaintiff must show that it has trademark rights on the mark or name at issue distinctive enough to deserve protection; and that the defendant's use of such mark or name is likely to cause consumer confusion as to the proper origin of the services offered. *Freedom Sav. & Loan Assn. v. Way,* 757 F.2d 1176, 1179 (11th Cir.1985).

█ The level of protection afforded a mark is proportionate to the level of distinctiveness. Accordingly, the more distinctive the mark, the greater level of protection. *Ice Cold Auto Air of Clearwater, Inc. v. Cold Air & Accessories, Inc.,* 828 F.Supp. 925 (M.D.Fla.1993). Here, Plaintiff claims that its color-coding scheme is distinctive to its SFSPac products and, therefore, is entitled to trademark protection. There are four categories of distinctiveness in which a mark may be classified: generic, descriptive, suggestive, and arbitrary or fanciful. *Id.* at 930–931. Additionally, in this Circuit, there are seven primary factors to consider in deciding whether there is a likelihood of confusion: 1) the type of mark at issue; 2) similarity of the mark; 3) similarity of products or services; 4) identity of purchasers and similarity of retail outlets; 5) similarity of advertising campaigns; 6) the defendant's

---

5. Analysis for trademark infringement under the Lanham Act also applies to claims of Florida common law trademark infringement.

*Chanel, Inc. v. Italian Activewear of Fla., Inc.,* 931 F.2d 1472, 1475 n. 3 (11th Cir.1991).

intent; and 7) actual confusion. *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir.1997).

Because Plaintiff has failed to present sufficient evidence that its color-coding scheme is inherently distinctive, the Court must grant summary judgment to Defendants as a matter of law.

## IX. RICO Claim

Congress designed the Federal Racketeering Influenced and Corrupt Organizations Act (RICO), Title 18, United States Code, Section 1961, *et seq.* as a flexible tool to fight organized crime. As such, it makes the following activities unlawful:

> (a) investing income derived, directly or indirectly, from a pattern of racketeering activity through collection of an unlawful debt in any enterprise which affects interstate commerce; (b) acquiring or maintaining an interest in any enterprise which affects interstate commerce through a pattern of racketeering activity or through collection of an unlawful debt; (c) conducting or participating in the affairs of any enterprise which affects interstate commerce through a pattern of racketeering activity or collection of an unlawful debt; or (d) conspiring to violate any of the provisions of Section 1962(a)-(c).

18 U.S.C. § 1962.

"Racketeering activities" covers a wide-range of federal and state crimes, including acts that are " 'chargeable' under several generically described state criminal laws, any act 'indictable' under numerous specific federal criminal provisions, including mail and wire fraud, and any 'offense' involving bankruptcy or securities fraud or drug-related activities that [are] 'punishable' under federal law." *Sedima, S.P.R.L. v. Imrex Co. Inc.*, 473 U.S. 479, 482, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (quoting 18 U.S.C. § 1961(1)).

To engage in a "pattern of racketeering activity," the defendant must have participated in "at least two acts of racketeering activity, one of which occurred after the effective date of [RICO] and the last of which occurred within ten years (excluding any term of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). Finally, "enterprise" is defined under the statute as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Id.* § 1961(c).

■ RICO establishes both criminal and civil penalties for violations of Section 1962. The civil remedies provision provides a private cause of action for "any person injured in his business or property by reason of a violation of Section 1962." 18 U.S.C. § 1961(c). However, as the United States Supreme Court noted, "in its private civil version, RICO is evolving into something quite different from the original conception of its enactors." *Sedima, S.P.R.L. v. Imrex Co. Inc.*, 473 U.S. 479, 482, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). The elements of a civil RICO claim are: "(1) a violation of section 1962; (2) injury to business or property; and (3) that the violation caused the injury." *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir.1991).

■ Plaintiff moves for summary judgment on its RICO claim. The Court notes that Plaintiff filed its motion for summary judgment prior to this Court's Order dismissing Plaintiff's RICO claim with leave to amend. Since that time, Plaintiff has filed an amended complaint, and the Court finds that it states a claim for relief under RICO. In both its complaint and its memorandum, Plaintiff makes numerous allegations of Defendants' violations of RICO. However, the Court finds that Plaintiff has

provided the Court with insufficient evidence for it to determine, as a matter of law, that Defendants violated RICO. Therefore, the Court must deny Plaintiff's Motion for Summary Judgment as to this Count.

As to Defendants' Motion for Summary Judgment, because there are factual disputes as to whether Defendants infringed on Plaintiff's copyrights or defrauded Plaintiff in any way, the Court must deny Defendants' Motion for Summary Judgment.

## X. Digital Millennium Copyright Act

Because this Court has previously dismissed Plaintiff's Count under the Digital Millennium Copyright Act with prejudice, Plaintiff's Motion for Summary Judgment as to this Count must be denied as moot.

## XI. Motion to Dismiss

Prior to filing its Motion for Partial Summary Judgment, Plaintiff also filed a motion to dismiss Defendants' counterclaims. Plaintiff also raised this issue in its Motion for Partial Summary Judgement; however, because this Court has ruled on Plaintiff's Motion to Dismiss Defendants' Counterclaims, Plaintiff's motion to dismiss, as contained in its Motion for Summary Judgment, must be denied as moot. Accordingly, it is

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 106) be **DENIED**; Sanitech's Motion for Summary Judgment (Dkt. No. 108) be **GRANTED** as to Counts I, IV, VIII, IX, XV, XVI, XIX, and XX and DENIED as to Counts II, VI, X, XI, XII, XIII, XVI, XVII, XVIII, and XXI; and Defendants' Request for Oral Argument be **DENIED**.